THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF KANSAS CITY
v. DUBACH *et al., Appellants.*

1. **Specific Performance :** LAND : PLEADING. In an action for the specific performance of a contract to sell land, plaintiff need not allege the contract is in writing.

2. **Practice :** INSTRUMENT SUED ON : STATUTE. The statute, (R. S., § 3560,) requiring the instrument of writing sued on to be filed with the petition, unless it is lost or destroyed, does not apply to such action.

3. ———: LEGAL CAPACITY TO SUE: CORPORATION. The question of the legal capacity of plaintiff to sue as a corporation, must be raised by demurrer or answer, or it is waived.

4. ———: ———: ———: POWER TO HOLD LAND : DEFENSE. The incapacity of a corporation, in a suit by it for the specific performance of a contract to sell land, to purchase and hold the same is a matter of defense.

5. **Land, Contract for Sale of.** A contract in writing for the sale of land, need not all be contained in one instrument signed by the vendor.

*Appeal from Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

AFFIRMED.

*Tomlinson & Ross* and *J. T. Dew* for appellants.

The motion to dismiss should have been sustained. *Wildbahn v. Robidoux*, 11 Mo. 659 ; and the motion was the proper way to raise the point. *Hann. v. St. J. R. B. Co. v. Kundson*, 62 Mo. 569 ; *Peake v. Bell*, 65 Mo. 584. The objection to all the evidence, because the petition does not state facts sufficient to constitute a cause of action, should have been sustained. *Pershing v. Canfield*, 70 Mo. 140. The objection to the record offered by plaintiff to prove its corporate capacity, ought to have been sustained, and plaintiff should have been required to prove its incorporation by competent evidence. R. S., § 710 ; Bliss on Code Plead., §§ 246, 251, 324, 345 ; Gould on Plead, chap. 6, § 47, note

6; *Farmers & Drovers' Bank v. Williamson*, 61 Mo. 259; *Little v. Harrington*, 71 Mo. 390. When an alleged agreement to convey land is denied in defendant's answer, it is not necessary for him to insist upon the statute of frauds as a bar, but the plaintiff must produce legal evidence of the existence of the agreement which cannot be established by parol proof. Bliss on Code Plead., § 353, and cases there quoted; *Wildbahn v. Robidoux*, 11 Mo. 659; *Cozine v. Graham*, 2 Paige 177, 181; *Ontario Bank v. Root*, 3 Paige 478, 481. Bryan was acting under special written authority, as plaintiff's representatives knew. If he exceeded his authority, the defendants are not bound. Story on Agency, §§ 69, 72, and note; *Tate v. Evans*, 7 Mo. 419; *Mechanics Bank v. Schaumberg*, 38 Mo. 228, 238; *Nesbitt v. Helser*, 49 Mo. 383. One relying on the ratification by the principal of an agent's act, must show that the confirmatory act took place with full knowledge of all the facts by the party to be charged. *Cravens v. Gillihan*, 63 Mo. 28; *Bank v. Gay*, 63 Mo. 33; *Arnold v. Dresser*, 8 Allen 435. Acceptance of an offer to sell land, to be operative, must be unequivocal, unconditional and must not vary from the proposal. Fry on Spec. Perf., §§ 167 to 172; Waterman on Spec. Perf., §§ 132, 134, 135; *Eads v. Carondelet*, 42 Mo. 113, 117; *Carter v. Shorter*, 57 Ala. 253, 257, 258; *Jenness v. Mount Hope Iron Co.*, 53 Me. 20. In a suit for specific performance, the contract, as alleged in the petition, must be clearly shown to have been fully agreed upon by both parties to the suit in all particulars, and closed, and the parties must have agreed to the same thing, in the same sense. Waterman on Spec. Perf., §§ 141, 152; *Taylor v. Williams*, 45 Mo. 80; *Blanchard v. Railroad Co.*, 31 Mich. 43. Contracts to be specifically enforced, must not only be proved in a general way, but their terms must be so precise and exact that neither party could reasonably misunderstand them, and those terms must be satisfactorily established by the evidence. *Taylor v. Williams*, 45 Mo. 80, 84; *Underwood v. Underwood*, 48 Mo. 527. And the execution of an undelivered

deed is not evidence of a contract to convey. *Freeland v. Charnley*, 80 Ind. 132; *Pulse v. Miller*, 81 Ind. 190. Such contracts must be fair and honest, and not the result of a mistake of intention. *Brix v. Ott*, 101 Ill. 70; *Pulse v. Miller*, 81 Ind. 190. They must describe the land with certainty. *Johnson v. Craig*, 21 Ark. 533; *Campbell v. Johnson*, 44 Mo. 247; *Alexander v. Hickox*, 34 Mo. 496; *Holme v. Strautman*, 35 Mo. 293, 302, 303; *Vasquez v. Richardson*, 19 Mo. 96, 98. If a contract be not mutual and binding on both parties to it at the time of its formation, it cannot be specifically enforced at the request of either, and it is immaterial whether the lack of mutuality results from personal incapacity, nature of the contract or any other cause. *Mastin v. Halley*, 61 Mo. 196; *Duvall v. Myers*, 2 Md. Ch. 401; *Sturgis v. Galindo*, 59 Cal. 28. A party cannot state one cause of action in his pleading and recover on a different one. *Waldhier v. Railroad Co.*, 71 Mo. 514; *State v. Creusbauer*, 68 Mo. 254; *Dorman v. Intelligencer Co.*, 70 Mo. 168. This is applicable in equity suits, as well as to actions at law. *Newhaver v. Kenton*, 79 Mo. 382; *Hitch v. Davis*, 3 Md. Ch. 266. Dubach & Co. having expressly repudiated the pretended contract, it was the duty of plaintiff to have proceeded at once to enforce the rights they claimed. Waterman on Spec. Perf., §§ 469, 470, *et seq*; Fry on Spec. Perf., § 732; *Banks v. Burnam*, 61 Mo. 76.

*Peak, Yeager & Ball* and *W. J. Scott* for respondent.

The petition substantially alleges all the facts necessary for a recovery. It was not necessary for the plaintiffs to plead a written contract, one good at common is all that is required, and if the adverse party wish to set up the statute of frauds he must plead it or waive it. The defendants by their pleading waived the statute of frauds. *Gist v. Eubank*, 29 Mo. 248; *Gardner v. Armstrong*, 31 Mo. 535; *Sherwood v. Saxton*, 63 Mo. 78. The petition alleges that plaintiff had ever been ready and willing to perform its

part of the contract, and he offered to bring the amount due into court. This was a sufficient tender. *Brock v. Hidy*, 13 Ohio St. 306; *Diechman v. Diechman*, 49 Mo. 109. It is only necessary to describe the land with reasonable certainty. *Johnson v. Craig*, 21 Ark. 533; *Briggs v. Munchon*, 56 Mo. 467. The plaintiff has not been guilty of laches. *Landrum v. Union B'k*, 63 Mo. 48; *Bridshaw v. Yates*, 67 Mo. 221. The defendants having contracted with respondent in its corporate capacity were estopped from denying its corporate existence. By their plea of the general issue, the defendants admitted the corporate existence of respondent. *Nat. Ins. Co. v. Bowman*, 60 Mo. 252; *Farmers' Ins. Co. v. Needles*, 52 Mo. 17; *Farmers' etc. B'k v. Williamson*, 61 Mo. 259; *Brown v. Ilins*, 27 Conn. 90. The memorandum required by the statute may consist of a single writing signed by the party or his agent, or it may be found in various writings or in letters. *Moore v. Mountcastle*, 61 Mo. 424; *Cathcart v. Robinson*, 5 Pet. 264; *Huddlestone v. Briscoe*, 11 Ves. 591. The decree was for the right party.

HENRY, J.—This is a suit wherein plaintiff asks that defendants be compelled specifically to perform a contract for the sale and conveyance of lot 55, Swope's addition, being the property situated on the northeast corner of Tenth and Walnut streets in Kansas City, Missouri, known as "the Cooley lot."

The petition alleges that plaintiff is a corporation, etc., and that defendants, on the 30th of November, 1878, owned the lot above described. That on or about that day, plaintiff and defendants entered into an agreement by which plaintiff agreed to buy, and defendants to sell, said lot for $1,100, with condition, on defendants' part, that they should make a perfect title, and on plaintiff's part, to pay $25 as a preliminary deposit on account of purchase, and the balance upon delivery by defendants to plaintiff of a deed to said property, provided the title should be satis-

factory to plaintiff. It alleges payment of· said $25 as a preliminary deposit, and that said title was found satisfactory to plaintiff, and that afterwards, on or about the 15th day of January, 1879, defendants sold and plaintiff purchased said property, and have since demanded a deed which defendants refused to deliver. That plaintiff has ever been ready and willing to perform its part of said contract, and does hereby offer and agree to bring said balance, $1,075, into court to be paid to defendants, upon delivery to plaintiff of a satisfactory deed to said property.

The answer admits that on or about the 15th day of January, 1879, about one year before this suit was commenced, plaintiff demanded a deed of defendants, as alleged in the petition, and that defendants refused to execute it, and repudiated the pretended agreement sued on, as alleged by plaintiff, and denied every other material allegation in the petition.

On a hearing of the cause at the October term of the Jackson circuit court, a decree was rendered in plaintiff's favor from which this appeal is taken.

Appellants' first contention is that the suit should have been dismissed on their motion, because the petition was founded upon an instrument in writing charged to have been executed by defendants, which was not filed with the petition and not alleged to have been lost or destroyed. Section 3560, relied upon by appellants' counsel, has no application to this case. A written agreement is not alleged, nor was it necessary to allege that the agreement to sell was in writing. *Gist v. Eubank*, 29 Mo. 248; *Gardner v. Armstrong*, 31 Mo. 535; *Sherwood v. Saxton*, 63 Mo. 78. The statute applies to actions grounded upon instruments in writing which are declared upon, as such, and was not intended to abolish the rule of pleading which authorizes a plaintiff to declare upon a contract which, at common law, was valid though resting in parol, notwithstanding a statute subsequently requires such contract to be in writing.

· · Nor was it incumbent on plaintiff to prove its incorporation. The cases cited by appellants' counsel are authorities against their position. In *Farmers and Drovers' Bank v. Williamson*, 61 Mo. 259, plaintiff sued and obtained a judgment in a justice's court, from which an appeal was taken to the circuit court, and, in delivering the opinion of this court, to which an appeal was taken, Sherwood, J., said : "Even, however, did the record disclose this fact (that plaintiff is a corporation) it is not seen how this would help the defendants' case, for in trials before a justice of the peace, in the absence of anything to the contrary, the defendant is presumed to plead the general issue. This plea, as a matter of course, goes to the merits and admits the corporate capacity of the plaintiff and the ability to sue ; and it would seem but reasonable that a corporation should occupy the same footing, in this regard, as a material person." The case of *Little v. Harrington*, 71 Mo. 390, so far from supporting the position contended for by appellants' counsel, is, also, an authority against them. It was there expressly held that, while the statute contemplates but one answer, it may contain whatever defense or defenses the defendant may have, " thus dispensing with the common law rule that a plea in bar waives dilatory pleas, or pleas not going to the merits." But sections 3515 and 3519 are clear and explicit on the subject. Section 3515 provides that " The defendant may demurr to the petition when it shall appear upon the face thereof    *      *      *    second, that plaintiff has not legal capacity to sue." And section 3519 declares that :

" When any of the matters enumerated in section 3515 do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, then defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject matter of the action, and excepting the objection that the

petition does not state facts sufficient to constitute a cause of action."

Judge Bliss, in his Code Pleading, says: "Although the plaintiff, if an artificial person, whose existence is not presumed, may be required to show such existence on paper, that the fact may be put in issue, yet the failure to do so is not a failure in stating the cause of action. It is but reasonable then, that the statute should require the defendant, if he objects to the plaintiff's demand, because where it is not presumed, he does not show a right to appear in court, to base his objection specifically upon that ground; I know of no comprehensive phrase that so well describes the ground of objection as a want of legal capacity to sue." Bliss on Code Pleading, sec. 408. To the same effect is *Bulkley v. The Big Muddy Iron Co.*, 77 Mo. 103.

It is, also, contended, that conceding the incorporation of plaintiff it had no capacity to enter into a contract for the purchase of land. Section 706, R. S., declares that "every corporation, as such, has power    *    *    * ; fourth, to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter, or the law creating it." The power to hold includes the power to acquire by purchase. Whether the amount of land this plaintiff may acquire was specified and limited in its articles of association is not a matter of inquiry, inasmuch as its capacity to purchase and hold the lot in question was not put in issue; and we may, therefore, assume, that having the right, under the general law, to acquire land, its articles of association provided for such acquisition.

The controlling questions in the case are: 1st, Was Bryan defendants' agent to sell the lot? 2d, Did he, as such, sell the lot to plaintiff? and, 3d, Was the contract reduced to writing and signed by defendants? There can be no question on the testimony that Bryan was defendants' agent to sell the property, but he was not a general,

but only a special agent. The proposition made by plaintiff to purchase, was not accepted by Bryan when made, but he told plaintiff he would submit the proposition to defendants and that he always wrote defendants about any offer he got for any of their property. Plaintiff was thus notified that Bryan was not and did not assume to act as a general agent for the sale of this property. In his letter to defendants, dated December 2, 1878, Bryan informed defendants of plaintiff's offer of $1,100, defendants to pay all taxes for that year and for a sidewalk the city was putting down, and to furnish abstract of title. Defendants' reply was first by telegram rejecting the proposition. It was as follows: "You can sell the Cooley lot for $1,100 cash, purchaser to pay the grading tax, we to pay general taxes." On the same day, they wrote substantially to the same effect, closing with the following: "These are our terms, and if they want it all right; if not we shall take the chances on it as we think real estate in Kansas City has seen its worst." Up to this date no agreement was concluded between the parties. Prior to December 3d, 1878, on the 27th of November, 1878, Doan and Furguson, building committee of plaintiff, gave to Bryan & Browne the following order:

"J. W. Byers, treasurer of the Young Men's Christian Association, will pay to Bryan & Browne, agents, $25 as preliminary deposit on account of lot of ground (describing lot in question) to which property it is hereby agreed that a perfect and satisfactory title shall be made upon final payment, including this, of the total sum of $1,100.

"CHAS. H. DOAN,
"F. M. FURGUSON."

On which Bryan & Brown wrote the following receipt:

"Received payment of within amount, with agreement to refund same if property is not conveyed as indicated.
"BRYAN & BROWNE."

On the day that the order and receipt were interchanged, Bryan informed plaintiff that he would submit its

proposition to defendants and, it is clear, taking this fact in connection with the peculiar character of the receipt for the $25, that neither plaintiff nor Bryan intended those papers to conclude a contract of sale, and if this and the letters and telegram above mentioned had been the end of the negotiations there could be no pretense that a contract of sale had been made; but on the 10th of January, 1879, Bryan wrote to Dubach & Co., stating that: " The parties to whom I sold the Cooley lot handed me the deed on the 6th and then came afterwards and would not let me send it, while they were quibbling about the grading and side-walk tax on it, which they agreed to pay at first and to-day have consented all right.    They have drawn up a little contract to go with the deed which I told them you would not sign.   I told them we would get a quit-claim deed for them if it could be done."    The contract sent with the deed for Dubach to sign related to the sidewalk, and re-quired Dubach to pay all that it should cost exceeding $50. The plaintiff subsequently waived it, and would necessarily have that tax to pay when they become owners of the lot, it being a lien on the lot, and in the decree the court charged plaintiff with that and other taxes paid by defend-ant since the contract of sale was entered into.    To this defendants replied January 14, 1879, as follows :

" We will sign the deed as sent and will agree to pay any small expense to get a quit-claim from Keiser.    *    * Our warranty is good, and we do not propose to spend much money, or to allow others to do it for us to correct a slight defect that amounts to nothing.   If this is satisfac-tory we will send the deed properly executed."   In the same letter they corrected Bryan's overcharge of commis-sion on the sale of the lot.

To that letter Bryan replied on the 18th of January, 1879, stating that the plaintiff accepted the proposition contained in defendants' letter of January 14th.

Subsequently defendants signed and acknowledged the deed, with the intention of sending it to Kansas City for

plaintiff, but were informed by Mr. Ross, by telegram, that the United States custom house was located on the block, and David Dubach then said to his brother and co-defendant: " That settles it; we won't sell."   On the 30th of January, 1879, they wrote to Bryan, saying: " We do not expect to execute the deed to the Cooley lot.  They waited too long for the cat to jump, and, thanks to our friends, they apprised us of the jumping of the cat before it was too late."   Why did they not send the deed ?   Was it because there was no valid contract of sale?   They do not say so, but it is manifest that they were ready and willing to send, and would have sent it, but for information of the enhanced value of the property owing to the location of the custom house on the same block.   They gave no other reason for not completing the sale by delivery of the deed, except information received by them of the good fortune of owners of lots in that block.   From these letters and telegram no difficulty is encountered in finding all the terms of the contract between the parties.   They were all reduced to writing, although not contained in one instrument and signed by the defendants.

No error materially affecting the merits of this controversy occurred on the trial of the cause, and we are all of opinion that the judgment should be and it is, therefore, affirmed.