A. D. ODOM ET AL., Appellants, v. LOUISE W. LANGSTON ET AL.—152 S. W. (2d) 124.

Division Two, June 10, 1941.

*J. N. Burroughs, H. D. Green* and *Paul Barrett* for appellants.

*Herman Pufahl, A. D. Scarritt, R. L. Hyder, M. E. Morrow* and *A. W. Landis* for respondents.

1206

WESTHUES, C.—This is a suit to contest the alleged last will and testament of Barsha Langston, deceased. At the close of all the evidence the trial court directed the jury to return a verdict upholding the will. From the judgment entered the contestants appealed.

The contestants are legal heirs of the testatrix. The defendants, respondents here, are: Louise W. Langston, the principal beneficiary under the will, who was the wife of S. Wayne Langston, deceased, an only child of testatrix; the St. Louis Union Trust Company, a corporation, executor under the alleged will; various beneficiaries named in the will, and also a number of persons named in the will as trustees. It was charged in plaintiffs' petition that the alleged will was the result of undue influence and fraud; that Earl V. Holt, now deceased, and the defendants, Louise W. Langston and the St. Louis Union Trust Company, were, at the time and prior to the execution of the alleged will, the confidential business advisors of Barsha Langston and were in full control and management of her property; that each stood in a fiduciary relationship to her; that the said Louise W. Langston, aided and abetted by Holt and the Trust Company, with intent to enrich themselves, induced the testatrix to permit them to draft a will for her. In the will Holt and the Trust Company were named as executors to act without bond. In the event of Holt's death Louise W. Langston was to act as co-executor without bond. The record disclosed that a trust agreement, designated as a living trust, was executed November 30, 1935, the same day the alleged will was signed. In this trust agreement the St. Louis Union Trust Company and Louise Langston were named as trustees. Testatrix died on April 8, 1938. The trustees took charge of the property soon after November 30, 1935, and at the time of the trial there was in excess of $95,000 in the hands of the trustees.

Appellants, as well as respondents, briefed many points of law, but the crucial questions in the case are: Did the evidence disclose a fiduciary relationship to have existed between the testatrix and Louise W. Langston, and if so did the evidence further show such activity on the part of Louise W. Langston in causing the execution of the will as would give rise to a presumption of undue influence? Respondents contend neither fact could be inferred from the evidence. But they say in point eight of their brief that even if a fiduciary relationship existed, no activity on the part of Louise W. Langston was shown, therefore, no case was made for a jury. [They cite Loehr v. Starke, 332 Mo. 131, 56 S. W. (2d) 772; Pulitzer v. Chapman, 337 Mo. 298, 85 S. W. (2d) 400; Rex v. Masonic Home of Missouri, 341 Mo. 589, 108 S. W. (2d) 72; Nute v. Fry, 341 Mo. 1138, 111 S. W. (2d) 84; Larkin v. Larkin, 119 S. W. (2d) 351; Callaway v. Blankenbaker, 346 Mo. 383, 141 S. W. (2d) 810.] The applicable rule was well and fully considered in Loehr v. Starke, supra, by the Court en Banc. The rule is as contended for by respondents, that is, the evidence, to make a submissible case for a jury, must be sufficient to support a finding of a fiduciary relationship, and in addition thereto a finding that the beneficiary standing in such relationship was active in the procurement of the will. We are of the opinion that

the evidence justified a finding that a confidential relationship did exist between testatrix and Louise W. Langston, Earl V. Holt and the Trust Company. Testatrix looked to them for advice in business matters. The evidence introduced by the proponents of the will tended to show such a relationship. It was conceded that the son, who died in August, 1935, looked after testatrix' business affairs. He was in ill health and evidently foresaw that he was soon to depart from this life. He wrote his mother a letter in which he urged her to make a new will and also suggested a general outline of what he thought his mother ought to provide for in her will. This letter was delivered to the testatrix after her son had passed away. Soon thereafter testatrix did execute a will. The evidence failed to disclose what became of that will. On November 30, 1935, the will here in question was executed.

Ruth Dressler, a witness to the alleged will, was called to testify by the proponents. She stated that she was employed at a local bank in which Mr. Holt was the cashier; that Holt dictated the will to her; that she transcribed it and then she and Mr. Holt took the will to the Langston home where the testatrix signed it in her presence and in the presence of the other witness, Mrs. Hawkins. Mrs. Hawkins also testified. She stated that she had been employed as a nurse in the Langston home for some years; that Mrs. Langston had been an invalid; that she was eighty-five years of age at the time the will was signed. She further testified that Holt made frequent visits to the Langston home after the son, Wayne, died; that Louise Langston also made frequent visits; that when Louise came the doors to the room would be closed. Note her evidence:

"Mr. Holt started making visits to Mrs. Langston's immediately after Wayne's death, and they were quite frequent. He would stay quite awhile sometimes, and sometimes not so long; I never did time him. Sometimes he would probably stay an hour. On a good many occasions the visits of Mr. Holt would be right after Louise would leave; that occurred a number of times. I don't believe I ever saw Louise and Mr. Holt there at the same time. Louise would frequently call me over the phone and tell me Mr. Holt was coming down to see Barsha, and she would tell me they were going to talk business and and to keep people away from there. I was not permitted to stay in the room when they were there. The door would be closed and I would go out."

. . . . . .

"Louise would take Mrs. Langston out riding in the car pretty often. I would help her in the car and help her out when they came back. I was not allowed to accompany them on these trips, sometimes Louise would tell me they wanted to talk business. This was all along right after Wayne died, and happened frequently from the

time Wayne died up until this instrument was signed the latter part of November.''

. . . . . .

''Was Mr. Holt alone in taking care of her business, or do you know of anyone else helping him. A. I don't know of anyone helping him only Louise. I know she had power of attorney to sign checks for her because Mrs. Langston wasn't able to write very much, and Mrs. Langston couldn't take care of her own business. I think her business interests were quite extensive. She had property in several localities, besides bonds, notes and mortgages and other things. I know of Louise helping her to take care of those things. I know of her going to St. Louis one trip some time that fall, when she was gone several days, I only remember the one trip that fall.''

Mrs. Truman Wilson, formerly Miss Mary Smith, testified that she was at the Langston home for about eight years; that after Wayne's death Louise W. Langston made frequent visits there; that Louise on many occasions telephoned and informed her that Mr. Holt was coming to talk business and instructed her not to let anyone disturb Mr. Holt and the testatrix. Mrs. Wilson testified that she witnessed a will shortly after Wayne's death. She did not witness the will here in question. Mr. John E. Gaskill, Jr., a representative of the St. Louis Union Trust Company, testified that he discussed with Louise W. Langston the terms of the trust agreement executed the same day the will was signed; that the information necessary to draw that trust agreement was obtained through Louise W. Langston. Note also that Louise W. Langston was named a trustee in the trust agreement. This witness had made a number of suggestions concerning the provisions of the will. He testified the trust company was not permitted to draw wills or trust agreements in which it was interested, and therefore he sent a memorandum of what the proposed will and trust agreement were to contain to Earl V. Holt, whom he believed to have been an attorney and who was recommended to him by Louise Langston. We may state here that Holt was not an attorney. When Gaskill sent the suggestions to Holt he sent a copy thereof to Louise Langston with the following letter:

''October 26, 1935.

''Mrs. Louise W. Langston,
''West Plains,
''Missouri
''Dear Mrs. Langston:

''After having given considerable thought to the plans that should be suggested in the case of Mrs. Barsha A. Langston we believe that the following is a proper distribution for her affairs to carry out her intentions and purposes and at the same time get all costs at a minimum.

"The original of these documents have been sent to Mr. E. V. Holt, the attorney, so that he may draft the documents.

"Very truly yours,
"(G)
"John E. Gaskill, Jr.

"JEG:AM"

No letter or copies of the proposed will and trust agreement were sent to the testatrix. All the dealings the trust company had with testatrix were through Louise W. Langston. She made two trips to St. Louis for this purpose. She furnished the trust company with the necessary information, such as the names of the relatives of testatrix and a list of the property owned by her. Holt was insolvent at the time and it is doubtful whether this fact was known to the testatrix. Louise Langston wrote a letter, dated November 13, 1935, to the defendant trust company in which she made an inquiry with reference to the amount of fees to be charged by the trustees and the executors, stating that the fees mentioned in these documents were not what she thought they would be, evidencing that she had discussed the provisions of the will with the trust company. There was other evidence introduced in support of the theory that Louise Langston, Holt and the Trust Company were the business advisers of the testatrix. We are of the opinion that the evidence was sufficient to justify a finding that a fiduciary relationship existed between the testatrix and Louise W. Langston, the Trust Company and Holt. We are also of the opinion that the evidence was sufficient to show that Louise Langston had been active in having the testatrix sign a new will. In one of her letters to Mr. Gaskill she made the following statement:

"Again I ask you to please hasten procedures there, as much as is practical. I am so anxious to get all this settled." That letter was dated November 13, 1935.

We do not want to be understood as expressing an opinion on the merits of the case. The question before us is, whether, under the evidence, the trial court should have submitted the case to a jury. Under the rulings of this court, as found in the cases cited supra, especially the case of Loehr v. Starke, by the Court en Banc, the cause should have been submitted to a jury. The judgment of the trial court is reversed and the cause remanded for trial. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.