A. D. ODOM ET AL., Appellants, v. LOUISE W. LANGSTON ET AL.—No. 37707.—173 S. W. (2d) 826.

Division Two, August 27, 1943.

*J. N. Burroughs, H. D. Green* and *Paul Barrett* for appellants.

*A. W. Landis, M. E. Marrow, Herman Pufahl, R. L. Hyder* and *Scarritt, Jones & Gordon* for respondents.

ELLISON, J.—This case was originally appealed to this court by the plaintiffs below, who were cast on a demurrer to both counts of their "last amended" petition in the circuit court of Douglas County. The appellants, as all the heirs of Mrs. Barsha A. Langston, deceased, of West Plains, Missouri, seek in the first count of their petition to set aside a written trust instrument executed by her covering personal property, and to recover the property for themselves, because of alleged fraud and undue influence exercised in the pro-

curement of the instrument, and for legal infirmities therein. The second count sought the same relief, but more especially because of the legal infirmities. However, appellants concede in an additional brief filed in the Court of Appeals that if the demurrer had been directed at the second count alone it would have been well taken. In a reply brief filed in this court they say a general demurrer to a petition containing two or more counts, any one of which is good, should be overruled. And their aforesaid additional brief and an additional reply brief both submit the conclusion that the *first* count of the petition is good. So we confine our discussion to that count.

We transferred the cause to the Springfield Court of Appeals on the ground that we did not have appellate jurisdiction because the record fails affirmatively to show the amount in dispute exceeds $7500.[1] See Odom v. Langston (Mo. Div. 2), 159 S. W. (2d) 686. The Court of Appeals reached a contrary conclusion and has re-transferred the cause to this court on the theory that we probably had inadvertently overlooked certain facts in the record bearing on that question. Odom v. Langston (Mo. App.), 170 S. W. (2d) 589. Two years ago on a will contest between the same parties [829] involving the same property, we took jurisdiction. Odom v. Langston (Div. 2), 347 Mo. 1201, 152 S. W. (2d) 124.

The point stressed in the opinion of the Court of Appeals is that the first count of the petition alleges the property covered by the trust and *"taken over and now held by the . . . trustees (thereunder) consists of money, notes, government bonds, industrial stocks and bonds and other securities of the value of *about* ninety-five thousand dollars." The opinion points out that the word about means substantially, approximately, almost, nearly, etc. We agree to that. Only recently we made the same holding in Crawford v. Arends (No. 37,998, 351 Mo. 1100, 176 S. W. (2d) 1) with respect to the expression "on or about." But that fact alone does not determine where appellate jurisdiction lies. The *net* amount in the trust estate must exceed $7500.[2]

The petition speaks as of the date of its filing, February 10, 1941. This was about five years and two months after the date of the trust instrument, November 30, 1935, and about two years ten months after Mrs. Langston's death on April 8, 1938. It does not disclose what indebtedness was then due from the trust, as for fees, commissions and otherwise; but it does allege the trustees *now* hold money and securities of the value (not *face* value) of about $95,000. In view of

---

[1] As required by Secs. 2 and 12, and Secs. 3 and 5, Amendment of 1884, all of Art. VI of the Missouri Constitution, and Sec. 2078, R. S. 1939, Mo. R. S. A., sec. 2078.

[2] Fleischaker v. Fleischaker, 338 Mo. 797, 801, 92 S. W. (2d) 169, 171; Whitworth v. Monahan's Estate, 339 Mo. 1123, 100 S. W. (2d) 460; Nies v. Stone (Mo. Div. 2), 108 S. W. (2d) 349(4); Higgins v. Smith, 346 Mo. 1044, 1048(5), 144 S. W. (2d) 149, 152(10).

*All italics in quotations are ours unless otherwise noted.

the fact that this is a trust estate and not the probated estate of a decedent who might have left debts, we are of the opinion that the Court of Appeals is right, and that appellate jurisdiction is in this court. Neither do we think our former decision on the same question is res judicata. Since this court alone has jurisdiction, it is our duty to exercise it. State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S. W. (2d) 544.

Going to the merits of the case. The petition alleges, as stated, that the execution of the trust instrument by Mrs. Langston was procured by fraud, deceit and undue influence practiced upon her by her confidential business advisors, a daughter-in-law, life beneficiary in the trust and one of the trustees, the respondent Trust Company, another trustee, and a local banker, all of whom stood in a fiduciary relation to her and would profit by the creation of the trust. We need not go into the details of these allegations since it is conceded they would be sufficient to state a prima facie case of fraud and undue influence, as was held in the will case supra, Odom v. Langston, 347 Mo. 1201, 152 S. W. (2d) 124—if the appellants have a right to assert it. The petition further alleges the trust was void for indefiniteness and uncertainty; that it violated the rule against perpetuities; and that the respondent Trust Company, one of the trustees, assisted in drawing the trust instrument in violation of Sec. 8029.*

However, the petition does not confine itself to an attack upon the trust instrument. Some of the allegations deal extensively with a "purported" or "claimed" will made by Mrs. Langston, which named as executors the respondent daughter-in-law and Trust Company, who are also trustees in the trust instrument. The petition alleges that the will is in contest in the courts of this state; that the aforesaid trustees are defendants in that suit and are charged with wrongful conduct similar and identical with that charged here; and that the will contains the same identical provisions as to the disposition of her (Mrs. Langston's) principal estate as those contained in the trust instrument, in that it bequeaths the property to the same persons, institutions and purposes in the same manner and percentages, all of which is stated in the same identical language and with identical provisions in both the will and trust instrument. The pleading then states these conclusions:

"so that the plaintiffs (appellants) would have the same rights to have the said provisions of the claimed will declared to be void that they have as to the trust agreement, which would give them all the property now held by defendants (respondents) under the trust agreement if it were placed under administration in the probate court; that the provisions of the claimed will for disposing of the property of the deceased being void and of no effect [830] secures to these

*All references to sections of the statutes, unless otherwise noted, are to the Revision of 1939, and to the same sections numbers in Mo., R. S. A.

plaintiffs an interest in the probated estate of Bersha Langston regardless of how the said action to contest her purported will may terminate or what judgment may be entered therein.''

Then follow two additional paragraphs alleging the two trustees, the daughter-in-law and Trust Company, will not bring any appropriate court action to test their right to hold the estate under said trust, and could not do so because they would be suing themselves and would be both plaintiffs and defendants; that the trustees have refused to account for said trust estate in the Probate Court and are holding independently under said trust instrument; and finally that the appellant heirs would legally become the owners of the trust estate if the trust were set aside; for all of which reasons they have an equitable right to bring and prosecute this action.

With regard to the allegations in the petition concerning Mrs. Langston's will and the pending contest thereof, appellants say in their additional brief and an additional reply brief that those allegations are immaterial and surplusage; that they (appellants) could have stated a cause of action without mentioning the will; and that the allegations were inserted because appellants needlessly anticipated the possibility of a defense that the right of action is primarily in the executors. As alleged in the concluding part of the matter quoted from the petition in the second preceding paragraph, it is appellants' theory that they are entitled to recover under the pleading regardless of how the will contest eventuates.

The demurrer shown in the record assigned these grounds:

''1st. The petition fails to state a cause of action against the defendants.

''2nd. The petition shows on its face that the plaintiffs have no legal right to maintain this action.

''3rd. The petition shows on its face that the plaintiffs have no interest in the subject matter of this action.

''4th. The petition shows on its face that this action is prematurely brought and that there is another action pending in the courts of this state which must be first decided in favor of plaintiffs before they will have any right to maintain this suit.''

The trial court sustained the demurrer for these specified reasons:

''FIRST: Because the suit was prematurely filed as a matter was pending on appeal from the Greene County Circuit Court, which in one sense of the word would be terminative to the interest of the plaintiffs to maintain this action.

''SECOND: That by reason of the allegation of the plaintiffs going into the case which is on a will contest from the Circuit Court of Greene County that when that action is determined, if the will is sustained, the plaintiffs could then bring an action to construe this will and set aside the trust that is now sought to be broken.

"THIRD: If this action was maintained it would be prematurely adjudicated as to the validity of such trust agreement and might undertake to decide or determine questions that may finally be settled in the Supreme Court.

"FOURTH: The petition shows on its face that this action is prematurely brought and that there is another action pending in the courts of this state which must be first decided in favor of the plaintiffs before they will have any right to maintain this suit, . . ."

Proceeding now to a discussion of the law of the case. Summed up, the basic issues between the parties are as follows. Appellants contend their petition shows they have the right as *heirs* of Mrs. Langston to maintain this suit to set aside her trust instrument, notwithstanding her estate is still in probate administration and her will contested, and regardless of the outcome of that litigation. To the contrary, respondents assert the petition on its face shows the appellants as heirs cannot maintain the action because: (1) the primary title to, and right to sue for, Mrs. Langston's personal property is exclusively in her administrator; (2) and her heirs have no assertable right of ownership therein so long as her probated will remains outstanding, making a contrary disposition thereof. Respondents further contend their demurrer properly raises these issues. Appellants reply that the demurrer on its face is insufficient to *raise* the issues; but that even if it does respondents are wrong on the *merits* thereof.

Appellants first challenge the sufficiency of respondents' demurrer generally, on technical grounds. They say demurrers are strictly construed, and should be couched in the language of the statute, Sec. 922; whereas all the assignments here, [831] except the first, are not in the language of the statute, are argumentative, and amount to no more than speaking demurrers, which are not tolerated in our practice, citing Pacific Lime & Gypsum Co. v. Mo. Bridge & Iron Co., 286 Mo. 112, 117, 226 S. W. 853, 855(6), and Hanson v. Neal, 215 Mo. 256, 264, 277, 114 S. W. 1073, 1075, 1080(5).

There is a general statement in the Hanson case that the object of the demurrer statutes is sharply to direct the trial court's mind to the precise ground of demurrer relied on; and that it is "well" to follow the language of the statute. The ground of demurrer there considered was, "that by the showing made plaintiff is not entitled to the recovery or relief prayed by the bill against these defendants." The writer of the opinion expressed the individual view that it was too ambiguous to come within the sixth or "no cause of action" ground of the statute. In the other decision, the Pacific Lime case, there was a long special demurrer based partly on an exhibit not set out in the petition, and buttressed by other extraneous facts and arguments. The decision held the demurrant could not resort to the

exhibit, and that the demurrer should contain only affirmative averments assailing the petition in one or more of the particulars prescribed by the statute; otherwise it would be a speaking demurrer.

We are unable to agree that the last three grounds of the demurrer here are too vague and ambiguous to be considered. It is our opinion, however, for reasons presently to be stated, that respondents' objections to the petition might have been raised by the one assignment that the petition fails to state a cause of action. But that would have been far more cryptic than the specific assignments respondents have made. And the whole demurrer is not long. As we proceed we' shall cite many cases where similar or more prolix assignments were held good. In particular, see Troll v. Third Nat'l Bank, 278 Mo. 74, 80, 211 S. W. 545, 546; and Pullis v. Pullis, 178 Mo. 683, 692, 77 S. W. 753, 755. And as to the charge that the demurrer is a speaking demurrer. The general rule, sanctioned by our decisions, is that a speaking demurrer is one which incorporates and invokes facts not shown on the face of the petition.[3] Appellants have not shown where the instant demurrer does that, nor do we find it. Neither is it argumentative unless reference to the pleaded facts which bring the petition *within* the demurrer statute, can be called argument. We rule this assignment against appellants.

 Going to their specific contentions, appellants concede the first ground of the demurrer—that the petition fails to state a cause of action—is well pleaded and comes literally within the sixth clause of the demurrer statute, Sec. 922. But, as we understand, they contend that assignment is insufficient to raise the point respondents seek to make. More specifically, appellants point out that respondents concede the petition states a good *abstract* cause of action in *someone* for fraud and undue influence, and merely contend the petition shows that cause of action does not belong to the *appellants* as heirs of Mrs. Langston. This, say appellants, is a ground which can be raised only under the second clause of the demurrer statute—lack of legal *capacity* to sue—which, under the requirement of Sec. 923, must be raised specifically.

On the other hand, the second ground of the demurrer does specifically charge that appellants have no legal *right* to sue. But appellants say that assignment, also, is bad because the lack of "capacity" to sue, specified in the statute, is a different thing from the lack of "right" to sue charged in the demurrer, the former referring only to general legal *incompetency*, such as insanity, minority,

---

[3] 39 Words & Phrases (Perm. Ed.) "Speaking Demurrer," p. 526; 41 Am. Jur., sec. 209, p. 440; 49 C. J., sec. 536, p. 423; Colley v. Jasper County, 337 Mo. 503, 507, 85 S. W. (2d) 57, 58(2); Thompson v. Farmers Exchg. Bank, 333 Mo. 437, 447, 62 S. W. (2d) 803, 806(1); State ex rel. Gentry v. Bray, 323 Mo. 562, 575, 20 S. W. (2d) 60, 62(5); Bennett v. Lohman, 292 Mo. 477, 493(II), 238 S. W. 792, 796(2, 3).

coverture, authority in a representative capacity and the like. This contention is inconsistent with appellants' contention stated in the last paragraph, where they maintain their alleged lack of assertable *ownership* of the cause of action (which goes to their right, not to their competency) should have been assailed under the second or "no capacity" clause of the statute. And there is authority in this state for that view.[4] But the majority and authoritative rule supports [832] appellants' second contention, that the "no capacity" clause of the demurrer statute refers only to legal competency.[5]

It is obvious that a challenge of plaintiffs' *right* to maintain the action would necessarily come within either the second (no capacity) or the sixth (no cause of action) clause of the statute, Sec. 922, supra. All the others deal with other matters. The Canada case, relied on by appellants and just cited in marginal note 4, illustrates that. It followed the strict, majority "no capacity" rule, but mistakenly applied it when the factual contention on demurrer was that the plaintiff could not maintain an action against a trustee for mismanagement of a trust because he (the plaintiff) was only a *contingent* beneficiary of the trust—which, of course, went to his right, not his competency. But the point we make is this. The pleaded grounds of demurrer in that case were that: "under the law and the pleadings, plaintiff is not entitled to the relief prayed for as against this defendant;" and that under the pleaded facts "plaintiff is not entitled to equitable relief against this defendant." In ruling these assignments were insufficient to invoke the "no capacity" clause of the statute, the decision held they did go *to the cause of action.*

So also in the Gruender case cited in marginal note 5. That was a will contest, and the ground of demurrer was "that the petition fails to state facts sufficient to constitute a cause of action in that the petition does not allege sufficient facts to show that the plaintiffs were *interested* in the probate of said will" (as the will contest statute, Sec. 538, requires.) Answering a contention that this raised a question of legal capacity, the decision explicitly ruled the assignment fell within the sixth clause of the statute, assailing the cause of action. Appellants' efforts to distinguish this Gruender decision

---

[4]Bulkley v. Big Muddy Iron Co., 77 Mo. 105, 107; Y. M. C. A. of K. C. v. Dubach, 82 Mo. 475, 480-1; Baker v. Mardis, 221 Mo. App. 1185, 1192(7), 1 S. W. (2d) 223, 227(6, 7); Crossan v. Noll (Mo. App.), 120 S. W. (2d) 189, 192(8); Canada v. Daniel, 175 Mo. App. 55, 63, 157 S. W. 1032, 1034(1).

[5]24 Words & Phrases (Perm. Ed.) "Legal Capacity to Sue," p. 529; Gruender v. Frank, 267 Mo. 713, 719, 186 S. W. 1004, 1006(3); Crowl v. Am. Linseed Co., 255 Mo. 305, 327, 164 S. W. 618, 625.

are ineffectual. It has been followed since, and there are other cases of similar import.[6]

One banc case along this line is State ex rel. Buder v. Bland, 305 Mo. 321, 326, 265 S. W. 989, which says: "It is always incumbent upon a plaintiff to allege and prove sufficient facts to show that he is concerned with the cause of action averred, and is the party who has suffered injury by reason of the acts of the defendant. It is not enough that he alleges a cause of action existing in favor of someone, he must show that it exists in favor of himself. . . ." Appellants' contention here is precisely and erroneously to the contrary. They assert that since they pleaded a good *abstract* cause of fraud and undue influence, and since respondents admit it, therefore that question is out of the case. In so contending they rely on the Canada case, supra, and Baxter v. St. Louis Transit Co., 198 Mo. 1, 95 S. W. 856. But neither decision supports them. As already stated, the Canada case ruled that when the plaintiff's *right* to recover is challenged it assails his cause of action. And in the Baxter case the question was one of true legal incapacity. There, a plaintiff minor had failed to prove the appointment of her curator. But the cause of action was *hers*. There had been no special "no capacity" demurrer. Held: the point could not be raised by demurrer to the evidence.

■ The third ground of demurrer is that appellants "have no *interest* in the subject matter of this action." This assignment probably was modeled after the one in the Gruender case, and goes to the cause of action. What has already been said disposes of it. The fourth ground is that the action was prematurely brought and that there is another pending action which must be decided in favor of appellants before they can maintain this suit. This obviously refers to the pleaded and pending will contest. Appellants say this ground was based on the third clause of [833] the demurrer statute, Sec. 922, supra, which is "that there is another action pending *between the same parties, for the same cause,* in this state," and they vigorously assert it is inapplicable because the petition does not show that all the parties to the will contest are the same as here, or that both causes of action are identical.

That also will be conceded. But the assignment has no such purpose. As earlier stated, it was directed to the proposition that Mrs. Langston's will was outstanding and in contest, and that the appellants could have no title to her personal estate unless and until the will was set aside. This issue, also, went to the sufficiency

---

[6]Troll v. Third Nat'l Bank, supra, 278 Mo. 1. c. 80, 211 S. W. 1. c. 546; Ewart v. Dalby, 319 Mo. 108, 115(I), 5 S. W. (2d) 428, 430; Smith v. Smith, 327 Mo. 632, 638, 37 S. W. (2d) 902, 904; Jensen v. Hinderks, 338 Mo. 459, 461-2, 92 S. W. (2d) 108, 109; Anable v. McDonald Land & Mining Co., 144 Mo. App. 303, 312-3, 128 S. W. 38, 41.

of the cause of action pleaded. As previously stated, all the questions raised by the demurrer might have been covered by the first ground; but we must overrule appellants' contention that the second, third and fourth grounds were insufficient to raise any proper legal issue.

Treating all the grounds of the demurrer as assailing the sufficiency of the pleaded cause of action, we look to respondents' first contention, that the right to sue for the trust property lay exclusively in Mrs. Langston's *administrator*. Respondents' brief says there are no allegations in the petition regarding the appointment of an administrator pending the will contest; but that we should take judicial notice "such must have been done," under Sec. 14 of the statutes. We do not agree. The fact that an administrator pendente lite was appointed under this statute does not *necessarily* follow from the pleaded facts that Mrs. Langston's will was in contest, and that the executor thereof was interested against the contestants. For under the statute, even where the Probate Court upon a hearing finds that to be true, it has a *discretion* as to whether an administrator shall be appointed. State ex rel. Smith v. Williams, 310 Mo. 267, 274, 275 S. W. 534, 536(8); In re Roff's Estate, 226 Mo. App. 1203, 1208, 50 S. W. (2d) 156, 158(6).

However, we think the foregoing facts plus others disclosed by additional allegations in the petition, do show an administrator pendente lite *was* appointed. The petition alleges the estate of the testatrix has been fully administered; that there are no debts outstanding; and that "there is a large estate in the hands of the *administrator* for distribution." It further alleges not only the pending will contest and the adverse interest of the respondent executors, but also that they are defendants in that contest. It manifests that the executors have not died or resigned because it alleges they *will* not assail the trust instrument. We know, furthermore, that the will contest must have been instituted within the same minimum period of one year during which Mrs. Langston's estate was in process of administration, Secs. 532, 538, 229. In other words the two were at least partly concurrent. As a matter of fact, the record in the will contest case, supra, on file here (of which appellants say we can take judicial notice) says the will was probated on May 17, 1938, that the contest was begun in December, 1938. In view of all these facts there *could not be* both executors and an administrator unless the latter was an administrator pendente lite. There being such an administrator, his tenure would extend until the final termination of the will contest, and his powers and duties would be the same as those of a regular administrator, among these being the duty to collect and preserve the estate. Union Trust Co. v. Soderer, 171 Mo. 675, 679, 72 S. W. 499, 500; Seibert v. Harden, 319 Mo. 1105, 1119-1120, 8 S. W. (2d) 905, 912.

The appellants' briefs are silent on the question whether there is an administrator pendente lite. Their whole case on the merits is built around these points: (1) that they can sue as heirs to - set aside the trust instrument, regardless of the will contest and how it eventuates, this because the respondents are estopped to say otherwise, and the two actions affect different property and are dissimilar; (2) that they can still do that even if the suit ordinarily should be brought by the *executors* of the will and estate, because the latter will not do so and cannot since they would be put in the attitude of suing themselves; (3) that the heirs can sue when it appears, as here, that the estate has been finally settled and all debts have been paid. We take up these points in the foregoing order.

Appellants' contention that respondents are estopped to dispute appellants' right as heirs to maintain this trust action, is based on the argument that by demurring to the petition they have admitted the will is *void* for fraud and undue influence. This argument assumes the petition does and can allege *facts* in this equity suit making the will void; for a demurrer does not admit evidentiary facts or conclusions of law, but only ultimate, [834] constitutive facts which are well pleaded in the suit on trial. Hughes v. State Board of Health, 345 Mo. 995, 998(2), 137 S. W. (2d) 523, 525 (4, 5). In the first place, the petition here does not allege the respondents *were* guilty of fraud and undue influence in procuring the execution of the will. It merely alleges they are so *charged* in the petition in that case. True, the pleaded conclusion of the instant petition, quoted above, says that "the provisions of the claimed will . . . being void," the appellants have an interest in the probated estate regardless of how the will contest may terminate. But that is a pure conclusion and assumption of law. We recognize that legal conclusions "do no harm" when they are accompanied by a statement of supporting facts, as held in Corley v. Montgomery, 226 Mo. App. 795, 799, 46 S. W. (2d) 283, 285(3), a case cited by appellants. But no supporting facts are alleged here.

Furthermore, appellants cannot try both cases on the merits in the hearing on this demurrer. A jury must pass on the validity of the will. From the beginning of our jurisprudence it has been held a suit to contest a will is statutory and not in equity. Lyne v. Marcus, 1 Mo. 410, 412, 13 Am. Dec. 509; Smarr v. Smarr, 319 Mo. 1153, 1164-5, 6 S. W. (2d) 860, 862(2). We fully understand appellants' counsel do not mean to say there can be an *adjudication* of the validity of the will in this case; but only that respondents for the purposes of the demurrer have admitted the will is void. However we do not agree to that, for it would plainly be a legal conclusion.

As regards appellants' contention that this suit and the will contest affect different property. On that question they point out that their petition does not set out the will or attach it as an exhibit; and that we do not know whether it contains a residuary clause which would bequeath the trust property if the trust were set aside. In other words, we are asked to entertain the inference that the will does not dispose of the property covered by the trust instrument, and that Mrs. Langston died intestate with respect thereto, assuming the trust instrument be nullified. If this is true, why all the allegations in the petition about the will?

We think the petition pleads enough of the contents of the will to show the contrary. But first let us say the petition is woefully lacking in averments as to the property covered by the trust instrument. The petition alleges that Mrs. Langston possessed a "large estate;" that the respondent trustees and executors conspired to cheat her and obtain control of "her estate;" that the instrument did give them "full power over her estate;" that this right to "handle and manage said estate" was to continue not only during her life but thereafter; and that the property taken over consists of money and securities of the value of about $95,000. Nowhere in the petition is the property further described. It does refer to the trust instrument attached as an exhibit; but we are precluded from considering the exhibit on demurrer since the authorities appellants, themselves, have cited, hold that we are confined to the *face* of the petition, which is the language of the statute. Sec. 922, supra. See Pacific Lime & Gypsum Co. v. Mo. Bridge & Iron Co., supra, 286 Mo. l. c. 118, 226 S. W. l. c. 855(6). But we have looked at the exhibit notwithstanding. It does not describe the property any better than the petition, merely referring to a schedule attached; and that schedule is not attached to the instrument as shown in the record. In any view of the matter the petition would be demurrable for failure to identify the property sued for, if that point had been raised. Union Trust Co. v. Soderer, supra, 171 Mo. l. c. 678, 72 S. W. l. c. 500.

Returning to the provisions of the will as pleaded in the petition, and remembering that the pleading refers to the property covered by the trust instrument as Mrs. Langston's "estate." The petition says the will "contains the same identical provisions as to the disposition of *her property* as that contained in the said trust instrument in this:". Then it goes on to say the will left a life estate to the respondent daughter-in-law, and that "the balance of the principal estate" was bequeathed to named institutions and purposes in specified percentages (adding up to 100%), "all of which is stated in the same identical language and with identical provisions in both the purported will and in the trust instrument." Following

that is the pleaded conclusion, which we have quoted earlier in this opinion, saying that by reason of the foregoing recitals appellants have the same right to have the will set aside as they have with respect to the trust instrument, "which would give them all the property now held by the defendants [835] under the trust agreement if it were placed under administration of the probate court." We will confess these allegations are not specific; but their only purport certainly is that the trust instrument covers Mrs. Langston's whole estate, and that the will contains the same provisions as the trust instrument, disposing of all of it.

Next, on the point that this suit and the will contest are separate, dissimilar actions, perhaps with different parties. To show that the two litigations are different, appellants argue that if the alleged fraud of the respondent executors in procuring both the trust instrument and the will had not been discovered until after the lapse of the statutory year within which the will could be contested, the will would stand, but the trust instrument could still be assailed within its longer statutory limitation period. All that may be true as a matter of law, but if the will were established, making the same disposition of the same property as does the trust instrument, what good would it do to set aside the latter? Assuming the trust were set aside for fraud and undue influence or any other reason, the trust property would not go to Mrs. Langston's heirs if the will be established, since it provides otherwise.

And if the trust declared by the will contains legal infirmities, they can be reached by a suit to construe the will and determine its effect. Probate of a will cannot be refused even though its provisions be wholly void. Weaver v. Allison, 340 Mo. 816, 817, 102 S. W. (2d) 884; Cox v. Cox, 101 Mo. 168, 13 S. W. 1055. We are firmly of the opinion that appellants have two hurdles to negotiate, the will and the trust instrument. Although either be set aside, they would not get the property if the other were validated. And they are evidently of the same opinion, since they have brought suits assailing both. The question in this case is, who may bring the suit attacking the trust?

We are convinced that appellants as heirs are not entitled to maintain this suit to set aside the trust instrument for any of the reasons thus far discussed. Neither did the mere fact that they filed the will contest, and that it had the effect of vacating the judgment of the probate court admitting the will to probate, throw the doors open to them as heirs. For the probate *administration* was not suspended. It would be the same if there were no will. Indeed, as we have already noted, under the statute, Sec. 14, supra, it would not even suspend the authority of the adversely interested executor of the will unless the probate court discretionarily so determined.

We must disagree with the statement in a recent case, McCrary v. Michael, 233 Mo. App. 797, 804, 109 S. W. (2d) 50, 53(8) that an interested executor is suspended by the *statute* in event of a will contest.

The long time rule in this state has been and is that the legal title to the personalty of a decedent passes primarily to his executor or administrator, from whom the heirs or legatees receive it through the process of administration.[7] True, the heirs of an intestate have certain recognized legal rights in his personal estate from the time of his death, sometimes called "equitable;"[8] but these are subordinate to the title of the administrator or executor, who represents not only the heirs or legatees, but also the law and creditors. Under the statutes[9] it is his duty immediately to take possession of the personalty and to administer it, suing or defending at law or in equity as necessary, and finally distributing the property under order of the probate court as the law directs. The only statutory exceptions to this rule are where the estate does not exceed the absolute allowances due the widow, widower or minor children; or does not exceed $100; or ten years have elapsed without an administration, after the death of a landowner.[10]

Without any question the administrator or executor is an indispensable party plaintiff in suits for personalty of the estate in probate, and the heirs or legatees cannot "by-pass" a *pending* administration, possibly with rare exceptions. Indeed it [836] has been held in a few cases[11] that even when the administrator refuses to sue, the heirs cannot maintain the action, their only remedy being a suit on his bond or a proceeding for his removal, under Sec. 43. And in any event, if the heirs do attempt to assert the cause of action, they must by their petition account for the failure of the legal representative to act.[12]

Appellants do not seriously dispute that rule, and say in their briefs they have pleaded facts showing their right to maintain

[7]Jones v. Peterson, 335 Mo. 242, 256(5), 72 S. W. (2d) 76, 84(9); In re Estate of Messersmith, 264 Mo. 610, 616, 175 S. W. 914, 915(1); Toler v. Judd, 262 Mo. 344, 351, 171 S. W. 339, 341; Orchard v. Wright, etc., Store Co., 225 Mo. 414, 433, 125 S .W. 486, 492(2); Pullis v. Pullis, supra, 178 Mo. l. c. 692-3, 77 S. W. l. c. 755; Green v. Tittman, 124 Mo. 372, 376, 27 S. W. 391, 392; Daly v. Wilbur, 209 Mo. App. 54, 61-2, 236 S. W. 671, 674(6); State ex rel. Hounsom v. Moore, 18 Mo. App. 406.

[8]Love v. White, 348 Mo. 640, 643, 154 S. W. (2d) 759, 760.

[9]Secs. 57, 94, 98, 230, 306.

[10]Sec. 2, Laws Mo., 1941, p. 289; Secs. 180, 249.

[11]Toler v. Judd, supra, 262 Mo. l. c. 352, 171 S. W. l. c. 341(2); Welch v. Diehl's Estate (Mo. App.), 278 S. W. 1057, 1059(4); Wass v. Hammontree (Mo. Div. 1), 77 S. W. (2d) 1006, 1010(7); Green v. Tittman, supra, 124 Mo. l. c. 377, 27 S. W. l. c. 392; Hellman v. Wellenkamp, 71 Mo. 407, 409.

[12]Clubine v. Frazer, 346 Mo. 1, 6(1), 139 S. W. (2d) 529, 531(4); Wass v. Hammontree, supra, 77 S. W. (2d) l. c. 1010(7).

this suit. We shall return to a discussion of these presently, but first as to their general authorities. They cite in their briefs a number of decisions holding the heirs are entitled to the personal property of their intestate ancestor without an administration.[13] Nearly all of these are cases where all the heirs of an intestate were sui juris and by unanimous consent had made a "family settlement" or "domestic distribution" of the estate personalty, all debts having been paid; and after the lapse of years an effort was made to start an administration and disrupt the arrangement on technical grounds. In the Bell case the elapsed time was only a few months, but the indebtedness for which the administration was sought really was not an estate debt. In the exceptional Advance Exchange Bank case the administration was current. There, there were no estate debts and the sole heir of the estate, who owed a note to a bank in statutory liquidation, was allowed to offset against the note a deposit of the administrator in the failed bank. But it can be said of all these cases that they do not vary or affect the general rule. State ex rel. Madden v. Sartorius, 349 Mo. 1054, 1068, 163 S. W. (2d) 987, 988-9.

Appellants have stressed and quoted a case somewhat in line with those just cited and discussed. It is Nord v. Nord, 91 S. W. (2d) 223, 226. A mother and father had deeded land to their son and took a note therefor. Five years later the father died leaving all his property to his widow. The estate was finally settled in the next two years. The son was executor and did not inventory the note he had given, or deliver it to his mother on final settlement. Some ten years later she sued him on the indebtedness. The son defended on the ground that the mother had no right to sue because she had not received the note through the process of administration. The Court of Appeals held the son was estopped by his own fraud or neglect; and that while the executor or administrator has primary title to the estate personalty, the legatee or heir will not thereby be "forever precluded" from asserting his right. The case is correct, but less in point, even, than some of those cited in the last paragraph.

Ford v. Hennessy, 70 Mo. 580, is the decision on which appellants chiefly rely. It was a bill in equity brought by the widow and child

---

[13]Johnston v. Johnston, 173 Mo. 91, 97, 73 S. W. 202, 203; Richardson v. Cole, 160 Mo. 372, 377, 61 S. W. 182, 183; McCracken v. McCaslin, 50 Mo. App. 85, 89; McDowell v. Orphans School, 87 Mo. App. 386, 393-4; Griesel v. Jones, 123 Mo. App. 45, 54-5, 99 S. W. 769, 771; Pullis v. Pullis, 127 Mo. App. 294, 298-9; 105 S. W. 275, 276; People's Savings Bank v. Hoppe, 132 Mo. App. 449, 459, 111 S. W. 1190; 1192; Painter v. Painter, 146 Mo. App. 598, 602, 124 S. W. 561, 562; Todd v. James, 157 Mo. App. 416, 421, 138 S. W. 929, 930; Troll v. Landgraf, 183 Mo. App. 251, 259, 168 S. W. 268, 270; Bell v. Farmers & Traders Bank, 188 Mo. App. 383, 387-8, 174 S. W. 196, 197; Advance Exchange Bank v. Baldwin, 224 Mo. App. 616, 620, 31 S. W. (2d) 96, 97.

of a donor to recover a monetary gift made by him in extremis to a clergyman as a result of undue influence. He also made a will about the same time giving all his property to the same donee. The facts are very indefinite. Apparently the property devised by the will did not include the subject of the gift. It does not appear that the will was contested. Neither is it shown whether the estate had been finally settled. The opinion states the executor of the will had sued the donee in the circuit court to recover the gift, but that recovery was denied on the ground that as executor he could not maintain the action. It was ruled that the donee stood in a confidential relation to the donor; that the gift was void; and that the widow and child were the proper parties to maintain the suit, seemingly on [837] the ground that the executor was adversely interested.

This Ford case has been cited several times on what constitutes undue influence, but never but once on the question as to who may maintain the action. That was in Wass v. Hammontree, supra, 77 S. W. (2d) l. c. 1010, where it was said that in the Ford case "the executor could not by reason of the peculiar facts maintain the action." This Wass case also points out that Toler v. Judd, supra, 262 Mo. l. c. 353, 171 S. W. l. c. 341, classed the Ford case with others where the plaintiffs "have no other remedy." (The Ford case was cited in the Toler brief, but not the opinion.) We are not prepared to accept either of these explanations as applying here. The Ford case did say the widow and heirs could sue to recover the void gift because the executor was in no position to do so. But the will there apparently did not cover the gift, the will was uncontested, there was no disinterested administrator pendente lite, and no showing as to what stage the administration had reached.

In this case appellants do not allege any prejudice and adverse interest on the part of the administrator pendente lite. He, being personally disinterested, could have brought the suit to recover the trust property as assets of the estate, if it would lie at all now. But assume there were no administrator pendente lite, and that the respondent executors had not been suspended during the will contest. What right have appellants, who are cut out by the will, to demand that the executors bring a suit in behalf of Mrs. Langston's estate and indirectly in their behalf as heirs, to nullify her trust, before it has been determined in the will case whether she died intestate and they have any rights as heirs? For the same reasons, how can they maintain this action for themselves; and how can the court render a decree for them until their right to inherit the property sued for is established?

In our opinion the law leaves the rights of the parties in nubibus until the will case is determined. The purpose of the statutes is

to permit the *administration* to proceed during a will contest so that creditors may be paid, etc.; but otherwise the *status quo ante* is maintained.[14] At the end of that litigation the appellants will know their rights. Until then it is the duty of the administrator to hold the estate property. If, as alleged, the respondents in their capacity as trustees have refused to surrender the trust property, the appellants have not requested any action by the administrator, so far as the petition shows. The administrator may be loathe to bring a suit to set aside the trust because the same property will go to the same parties if the will is sustained. As regards the appellants, if they have no adequate remedy at law, or are threatened with the loss of their claimed rights in the trust property because the statute of limitations may run against their right to attack it, perhaps, on a proper showing, equity would relieve them. But they have made no such showing in the petition here under review. We think the ruling of the trial court on the demurrer was proper, and the judgment is affirmed. All concur.

---

[14]In re Thomasson's Estate (banc), 350 Mo. 1158, 171 S. W. (2d) 553, 559(14); State ex rel. Barlow v. Holtcamp, 322 Mo. 258, 264, 14 S. W. (2d) 646, 649; Carroll v. Reid, 158 Mo. 319, 59 S. W. 69.