Frank DANFORTH and Janette Barb, Plaintiffs-Respondents,

v.

Loretta Ollison DANFORTH, Defendant-Appellant.

No. WD 33838.

Missouri Court of Appeals, Western District.

Nov. 15, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 28, 1983.
Application to Transfer Denied Feb. 15, 1984.

John C. Milholland, Cenobio Lozano, Jr., Harrisonville, for defendant-appellant.

Bart L. Strother, Kansas City, for plaintiffs-respondents.

Before CLARK, P.J., and PRITCHARD and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Loretta Ollison Danforth appeals a jury verdict setting aside a will on the basis of fraud and establishing a prior will as the Last Will and Testament of Duncan R. Danforth. On August 25, 1980, two wills dated August 13, 1980 and December 5, 1978 were offered for probate. The probate court granted letters testamentary to the 1980 will and rejected the prior will. On September 4, 1980, two children of the testator by a second marriage, Frank Danforth and Janette Barb, filed their initial will contest which was later amended on September 11, 1980.

Appellant raises six points on appeal, although many of them contain unrelated and independent arguments. In essence, she contends that the trial court: 1) lacked subject matter jurisdiction over the will contest, 2) committed a number of errors in the conduct and result of an equity trial concerning whether a partial distribution to Frank Danforth should bar the contestants from pursuing the will contest, 3) erred in refusing to strike the petition for insufficiently stating a claim based upon fraud, 4) erred in refusing to direct a verdict on behalf of the 1980 will, 5) erred in allowing respondents to try an unpleaded conspiracy-to-murder claim which opened the door to the admission of hearsay and other prejudicial and distracting evidence, and 6) erred in giving certain jury instructions.

The testator, Duncan R. Danforth, a 75-year old retired doctor residing in Camden County, married Loretta Ollison Danforth, then 21-years old, in a civil ceremony on August 13, 1980, just a few hours before signing and publishing a will which gave the appellant over one-half of an approximate 1.5 million dollar estate and just a few days before being found shot to death on an isolated rural road in Camden County, Missouri. The facts surrounding Dr. Danforth's death adduced at trial are consistent with those detailed at *State v. Danforth*, 654 S.W.2d 912, 914–17 (Mo.App.1983) in which Loretta was found guilty of conspiracy to commit capital murder.

Danforth had three children, a daughter from his first marriage, and two from his second marriage, respondents Frank Danforth and Janette Barb (referred to as Frank and Janette). The distributions under the two wills were as follows. The contested 1980 will bequeathed the sum of $10,000 to Janette and distributed the rest of the real and personal property between appellant and Frank. Appellant's share was valued at $953,279.90, Frank's at $523,-590.01. Eileen Ollison, appellant's mother, was to receive a sum of $50,000 in the event of a common accident involving the testator and his wife. The contested will mentioned a third child, "Lynn Cotes," but made no provision for her. On the other hand, the 1978 will distributed Danforth's estate in equal shares to Frank and Janette, and left the sum of one dollar to daughter "Alice Lynn Coats" of Austin, Texas.

In their amended petition, Frank and Janette named Loretta Ollison Danforth, Eileen Ollison, Alice Lynn Coats, and William Icenogle, Executor, as party defendants. Ms. Ollison did not appeal from the judgment setting aside the 1980 will. Frank and Janette served a summons and petition upon Alice Lynn Coates in Tavis County Texas on October 22, 1980 and again on November 26, 1980.

Count I of the amended petition challenged the 1980 will on a number of grounds, although the respondents proceeded to trial solely based upon their allegations of fraud as contained in paragraph ten of the amended petition:

Exhibit A [the 1980 will] was procured by the fraud of defendant Loretta Ollison Danforth and is therefore invalid. Duncan R. Danforth signed Exhibit A by reason of the fraud of Loretta Ollison Danforth. Representations consisting of the solemn marriage vows and promises were made to Duncan R. Danforth by Loretta Ollison Danforth on August 13, 1980, and she professed her love for him. These representations were false and known to be so by Loretta Ollison Danforth. These false representations were intended to deceive Duncan R. Danforth

and did deceive him. Duncan R. Danforth relied upon these false representations and was induced to sign Exhibit A which he would not otherwise have signed.

Frank and Janette voluntarily dismissed without prejudice Count II which alleged that Loretta Ollison Danforth was reduced to widowhood by her own felonious act and therefore should be barred from all rights under the will or inheritance rights, homestead allowance, exempt property or any statutory allowances from the estate of the decedent.

The facts consistent with the jury's verdict against the 1980 will and in favor of the 1978 will are as follows. Loretta Ollison and Dr. Danforth appeared in early afternoon on Wednesday, August 13, 1980 before an associate circuit judge for Camden County, who performed for them a civil marriage ceremony.

Throughout the events of August, 1980, including after the marriage, Loretta lived with her boyfriend, Mike Stith, at her mother's home in Climax Springs. As late as August 17, 1980, Stith's aunt observed Loretta sitting on Stith's lap and showing affection towards him. Loretta wrote letters to Stith while awaiting trial on charges of conspiracy to murder the doctor professing her love for Stith, and her desire to bear his children. Mike Stith was in need of money in August, 1980.

Sometime before the marriage on Wednesday the 13th, Loretta contacted an attorney to prepare a will for Dr. Danforth. The understanding was the execution of the will would not take place until Loretta married the doctor. Shortly after the ceremony, Dr. Danforth executed his will, and Loretta and the doctor proceeded to the Breckenridge Inn in Kansas City.

Unknown to Dr. Danforth, Loretta's anticipation of their honeymoon night included arranging for his murder. In early August, 1980, Mike Stith contacted Harrison Williams from Olathe, Kansas to "take care of a problem that he had." Williams was the boyfriend of Stith's aunt. Williams procured the help of his friend, Jack Peary,

and the two met Stith on August 12, in Sedalia to discuss the plan. Stith had a female companion with him, later identified at trial as Loretta and referred to by Stith as his girlfriend, who waited in Stith's car as the three men discussed their plan. In exchange for the promise that Williams and Peary would appear the next day at the Breckenridge to kill the doctor, Stith gave them $1500, pictures of Dr. Danforth and a yellow Olds Delta 88, and a handdrawn map of Kansas City showing the location of the Breckenridge. A bumper sticker would also be placed on the doctor's car for identification.

Williams and Peary arrived at the Breckenridge the next afternoon, looking for the doctor's car. The two spotted the car around 7:00 or 8:00 o'clock. Loretta was to send the doctor out to his car at 9:00. The doctor appeared at 9:00 at his car, but the two reconsidered carrying out the plan at the Breckenridge because the hotel had too many windows and was too well-lit. The two found Loretta in the hotel lobby. At her request they agreed to try again. This time the doctor emerged from the hotel several times on a variety of pretenses fashioned by Loretta, including looking for her glasses, but Williams and Peary did nothing. The two returned to the hotel lobby to tell Loretta, who feigned sickness as an excuse to leave the hotel room, that the plan was unworkable. An alternative plan was hatched. Loretta drove to McDonald's with the doctor and left the keys in the car so that Peary could jump in to abduct him. Loretta told Peary to be careful with the car and not get it bloody since soon it would be hers. Although Loretta as planned went to McDonald's, the number of patrons again forced a new plan of action. Williams and Peary talked with Loretta inside the restaurant, and she suggested to them that she unlock the door to her hotel room so that they could go inside and use Dr. Danforth's .45 automatic to kill him. Williams and Peary told Loretta that would be fine with them but after reaching the floor of the hotel, they decided any noise would be heard. Again the two met Loretta in the

lobby and the three went riding around discussing the plan. Loretta at this time had grown excited and desperate. She had just talked to Stith by telephone who had been crying that he needed money and she was the only way that he could get it. If the doctor was not killed by the time they went home, the will would be changed. Loretta told them she did not want to sleep with "the old man."

They now agreed that the next morning Williams and Peary would follow Loretta and the doctor in their car. Upon her pretending to need to use the restroom, Danforth would stop and Peary would jump into the car, holding a gun to the doctor's head. If the doctor tried anything foolish, Loretta told them to go ahead and shoot since she no longer cared. If caught, Loretta said she would tell the police she had been raped and the doctor killed. The next morning Williams and Peary decided they would rather sleep than kill the doctor, and returned to Olathe on Thursday, August 14.

After receiving a call from Stith, the two returned and met him at a Bait and Tackle Shop in Climax Springs on Friday, August 15. The doctor was to drive by around 9:00 on his return from dinner at the Ollison residence where Loretta still lived. Williams and Peary would shoot the doctor as he drove along a certain road. Peary kept a lookout for the doctor but when he could not identify the driver he decided not to risk shooting someone he was not supposed to shoot. On Saturday, August 16, Stith directed Williams and Peary to the road leading to the doctor's home where according to Stith only a senile old lady lived, and an ambush could take place with a safe escape, possibly by boat. The two actually rented a boat but wrecked it after testing how fast it would go. The doctor would be returning that evening. Williams and Peary, however, were not there to meet him. Mrs. Scott (the supposedly senile woman), stopped the two in their car, questioned them and wrote down their license plate number. The two returned to Olathe.

On Monday, August 18 Stith called Williams and Peary to ask if they had an alibi

for the previous day, since he had taken care of the job himself. Stith had asked his aunt to provide him with an alibi.

Before the doctor's death, he had spent each of the evenings after the 13th at the ranch but not with Loretta. He expressed his disappointment over his honeymoon to his son Frank and Frank's wife, as well as his neighbor, Mrs. Scott, saying that Loretta would have nothing to do with him and kept sending him to the car for her glasses, was either sick or on the telephone, and would disappear for long periods of time. The doctor told Frank he had made a new will but if Loretta would not come live with him he would annul the marriage. The doctor left the ranch on Sunday to talk to the appellant at her mother's, but was never again seen alive.

## I.

Appellant points out four ways in which the circuit court lacked subject matter jurisdiction over the will contest because the prescriptions of Section 473.083 Revised Statutes of Missouri 1978 (all sectional references in this opinion refer to RSMo. 1978 unless otherwise indicated) were not strictly met. The filing of a petition stating a cause of action under the statute has the effect of vacating the probate court's order granting probate and letters testamentary to the disputed will. *Fletcher v. Ringo,* 164 S.W.2d 904, 906 (Mo.1942); *Smith v. Smith,* 327 Mo. 632, 37 S.W.2d 902, 904 (1931). Will contests are in derogation of the common law, and thus are to be strictly construed. *State ex rel. Cooper v. Cloyd,* 461 S.W.2d 833, 836 (Mo. banc 1971); *Mills v. Kettler,* 573 S.W.2d 672, 673 (Mo.App.1978). The limitations of the will contest statute, Section 473.083, prescribe the jurisdiction of the circuit court, which is merely derivative of the probate court. *Lambert v. Crone,* 621 S.W.2d 59, 61 (Mo.App.1981).

The contestants filed their original petition in two counts. "First Amended Petition to Contest Will and Have Rejected Will Probated" was filed in two counts. Count I sounded in a will contest, based on fraud, while Count II alleged the appellant was

barred by her conduct in killing Danforth. The contestants voluntarily dismissed without prejudice Count II, and the case proceeded to trial solely under Count I of the amended petition.

Appellant claims the contestants violated Section 473.083.2 by improperly joining Count II of the original petition with Count I of the amended petition.[1] She correctly argues that a will contest is limited to the sole issue concerning whether the paper or papers pending before the probate court are in fact the last will and testament of the decedent. *State ex rel. Siegel v. Strother,* 365 Mo. 861, 289 S.W.2d 73, 80 (1956). However, appellant can only succeed in her argument by ignoring the elementary principle that an amendment to pleadings abandons any prior pleadings not referred to or incorporated into the new pleading. *New First Nat. Bank v. C.L. Rhodes Produce Co.,* 332 Mo. 163, 58 S.W.2d 742 (1932); *Bobb v. Bobb,* 89 Mo. 411, 4 S.W. 511 (1887). Having abandoned the original petition and voluntarily dismissed Count II of the amended petition, no improper joinder between a will contest and another claim occurred.

Appellant's second claimed jurisdictional deficiency relating to the contestants' failure to plead the requisite "interest in the probate of the will" under section 473.-083.1[2] equally has no merit. In their amended petition, Frank and Janette state they are the son and daughter and heirs at law of Duncan R. Danforth, deceased, and have an interest in the "estate" of Danforth. In addition, they state that under the terms of the 1980 will (incorporated into the petition as Exhibit A), "each plaintiff is entitled to receive a portion of the estate less in amount, value, and kind that each plaintiff would be entitled to under the terms of the [the 1978 will]" (incorporated into the petition as Exhibit B). To sustain her argument, appellant relies upon the distinction made in *Palm v. Maguire,* 347 Mo. 189, 146 S.W.2d 636, 637 (Mo.1941) and *State ex rel. Cooper v. Cloyd, supra,* between a contestant's standing to contest a will premised upon an interest in the "probate of an *estate*" and in the "probate of a *will*". Appellant correctly points out that the proper focus lies in the contestant's standing to benefit from setting the will aside rather than from a benefit derived solely from the estate of the deceased. In *Palm v. Maguire,* the petition alleged a prior valid will which gave the contestant most of the decedent's estate, and which would have no effect unless the later will would be set aside. The court found the petition sufficiently stated facts showing plaintiff had an interest in the probate of the will. The holding in *State ex rel. Cooper v. Cloyd,* did not center upon the sufficiency of the pleadings, but rather focused whether in substance the contestants demonstrated the requisite interest in the probate of the will where the prior will gave contestants a residual interest in a trust fund with narrower encroachment powers than the will being probated. Neither of the two decisions impose, as appellant would argue, any necessity to plead any technical incantations invoking will contest jurisdiction. Instead, their true import lies

---

1. Section 473.083.2 RSMo.

"Where the petition or the answer thereto is based on the ground that an instrument other than the will probated is the last will of testator, or that rejected will, other than a will probated is the last will of testator, *the pleadings shall be so framed as to submit the issue of which of said instruments is the last will of testator, or whether decedent died intestate, and the judgment therein shall determine said issue.* No will shall be established in the action unless same has been theretofore probated or rejected by the probate court." (Emphasis added.) The present Section 473.083 did not take effect until January 1, 1981.

2. Section 473.083.1 RSMo.Supp.1982 provides:

"Unless any person interested in the probate of a will appears within six months after the date of the probate or rejection thereof by the probate division of the circuit court, or within six months after the first publication of notice of granting of letters on the estate of the decedent, whichever is later, and, by petition filed with the clerk of the circuit court of the county, contests the validity of a probated will, or prays to have a will probated which has been rejected by the probate division of the circuit court, then probate or rejection of the will is binding."

in the jurisdictional necessity of pleading and proving sufficient facts demonstrating the requisite interest in the probate of the will. "The language .... to the effect that the interest must be in the probate of the will rather than the estate means that an interest in the estate, *without* having the requisite interest in probate, is not sufficient to give standing to maintain a will contest." *Cloyd,* 461 S.W.2d at 837 (citations omitted).

■ The contestants here pleaded the facts demonstrating "a financial interest in the estate, and one which would be benefited by setting the will aside." *Swinney v. Cummings,* 581 S.W.2d 474, 476 (Mo.App. 1979); *Palm v. Maguire, supra.* "The 'interest' of one who may contest is not the interest of every busybody or tomdicary who may not approve of the will. It must be a financial or property interest *derived either from inheritance or under a will.*" *Swinney v. Cummings, supra,* at 477, quoting *First Presbyterian Church of Monett v. Feist,* 397 S.W.2d 728, 732 (Mo.App.1965) (emphasis added). Contestants here fully met the jurisdictional standing requirements of Section 473.083.1.

The third claimed jurisdictional deficiency relates solely to the *original* petition's failure to join all of those persons who have an interest in or under the will, since the original petition named only Loretta Ollison Danforth as the defendant. Because no such claimed deficiency is argued under the amended petition, the point has no merit. *See New First Nat. Bank v. C.L. Rhodes Produce Co., supra.*

■ The facts relating to appellant's fourth claim of jurisdictional defect are as follows. Frank and Janette's amended petition named "Alice Lynn Coates (Cotes)" as one of the defendants and identified her in the body of the petition as the daughter and heir at law of Duncan R. Danforth, deceased, and as a legatee under the 1978 will.[3] The 1980 will, incorporated into the petition as Exhibit A, states that the testator has a daughter, "Lynn Cotes" from a previous marriage, but made no provision for her. The 1978 will bequeathed the sum of one dollar to daughter "Alice Lynn Coats". Both wills state that the testator Duncan R. Danforth had three children. On two occasions within the jurisdictional time period, service was obtained upon "Alice Lynn Coates (Cotes)" in Austin, Texas. Frank and Janette's attorney listed a mail drop number but not an address on the summons. On December 29, 1980 appellant moved to dismiss the petition for failure to join and serve "Alice Lynn Coats" or "Lynn Cotes". On February 2, 1981, an affidavit was filed by "Alice Lynn Coats" which sought to clear the matter up by identifying herself as the same daughter named under the various spellings in both wills and as a defendant in the will contest. Finally, a summons was issued to "Alice Lynn Coats" on February 27, 1981 while the motion to dismiss still lay pending. On March 16, 1981, "Alice Lynn Coats" *entered* an *appearance* and incorporated the previously filed affidavit in her answer.[4]

In a two-fold argument, appellant objects to the failure to serve and join "Lynn Coats" as a party to the will contest within the jurisdictional time period. The affida-

**3.** An initial question concerns whether this third child, who received nothing under the 1980 will and a sum of one dollar under the 1978 will, was a necessary party to the action to set aside the 1980 will and establish the 1978 will as the Last Will and Testament of Duncan Danforth. The third child was not a necessary party by virtue of her status as an heir. *Thomson v. Butler,* 136 F.2d 644 (8th Cir.1943) (applying Missouri law). Legatees under prior revoked wills are not necessary parties unless, as here, the prior will under which they are legatees is offered for probate. *Hall v. St. Louis Union Trust Co.,* 602 S.W.2d 455 (Mo.App.

1980). Despite the deminimus amount of the legacy under the 1978 will, see *Kane v. Mercantile Trust Co. Natl. Assoc.,* 513 S.W.2d 362, 365 (Mo.1974), the third child was a necessary party to the action. The lesson to be learned in will draftmanship appears obvious.

**4.** This appearance, via the incorporated affidavit, stated that the defendant did not wish to participate personally in the case but had been fully advised of her opportunity to respond to the petition.

vit filed on February 2, 1981, according to appellant, could not be considered by the trial judge to show that the person identified as "Lynn Coats" had in fact been served. Secondly, appellant argues that "Alice Lynn Coates (Cotes)" was never served "as provided by law" under Rule 54.02 because the address of the plaintiff's attorney, where responsive pleadings were to be filed, did not appear on the summons itself.

Since both wills stated that the testator had three children, two of which were plaintiffs, Frank and Janette, elementary mathematics and common sense dictate against the conclusion that two children with names of such close resemblance existed. In *Crawford v. Bashor*, 564 S.W.2d 323 (Mo.App.1978), relied upon by appellant, the contestants failed to name as a party defendant either the Baptist Church Cemetery, the cemetery association, or any known or unknown trustee of the cemetery, where the contested will included a bequest to the "Baptist Church Cemetery of Whitesville, Missouri." Contestants there could find no public record listing any legal entity bearing the name Baptist Church Cemetery of Whitesville, Missouri. The court affirmed the dismissal of the petition, reasoning that by unilaterally ignoring the bequest to the cemetery, the contestants had precluded any inquiry into the rights or status of the named legatee, and thus, thwarted the purpose of the statute which contemplates the joinder of all interested parties to the will contest. The court specifically noted that the contestants failed to show good cause why they did not include the legatee as a party to the action.

■ Those named as beneficiaries of gifts and bequests generally are necessary parties to a will contest.[5] *Cole v. Smith*, 370 S.W.2d 307 (Mo.1963); *Crawford v. Ba-*

*shor, supra* at 325. Section 473.083.4 requires the petitioner to proceed diligently to secure and complete service of process on all party defendants within ninety days after the petition is filed or else, "in the absence of a showing by the plaintiff of good cause for failure to secure and complete service," face dismissal of the petition.

■ Unlike *Crawford v. Bashor, supra,* where the contestants chose to totally ignore without explanation the legacy to the cemetery association, the contestants here did not ignore the legacy to the third child of Duncan Danforth. The most that can be said is that they chose to ignore the apparent misspelling of the name of a certain person named in the wills. In the instant case the contestants made a showing through an affidavit that the legatee "Lynn Cotes" was in fact the defendant named in the petition and the third child of Duncan Danforth. She had been served within the jurisdictional time period and fully given the opportunity to appear to protest her interest in the proceedings, thus fulfilling the purpose of the statute. *See Donnan v. Donnan*, 264 S.W.2d 318 (Mo.1954); *Shaffer v. Cochenour*, 569 S.W.2d 320 (Mo.App. 1978). Appellant cites to *Eames v. Eames*, 463 S.W.2d 576 (Mo.App.1971) and *Stanfill v. Stanfill*, 505 S.W.2d 438 (Mo.App.1974) which hold that absent a stipulation by the parties an affidavit may not be considered as "evidence." Section 473.083.4, however, does not require the admission of *evidence* to explain the failure to complete service upon a party defendant; it requires only a "showing" of good cause. Although "good cause" consists of the circumstances explaining the failure to obtain service of process, under the particular circumstances of this case and by analogy, the contestants need not be required to submit "evidence"

5. Effective January 1, 1981 by amendment to Section 473.083, those persons whose interests would not be affected adversely by the results of the will contest need not be joined as defendants. Even prior to this amendment, the statute has been held not to *invariably* require the joinder of all named beneficiaries in a will contest. In *Donnan v. Donnan*, 264 S.W.2d 318 (Mo.1954), the widow of the testator who had renounced interest in the will prior to the will contest was held not to be a necessary party. *See also Lambert v. Crone*, 621 S.W.2d 59 (Mo. App.1981). In *Shaffer v. Cochenour*, 569 S.W.2d 320 (Mo.App.1978), the failure to join as a defendant the testator's daughter and legatee under the will, who had been granted a voluntary dismissal as a plaintiff in the will contests, was held not fatal to the action.

of the circumstances explaining that service on a necessary party was obtained to avoid the motion to dismiss. *Cf.* Rule 55.28.

■ The final aspect of appellant's argument concerning the absence of the plaintiff attorney's address upon the summons has no merit. This lady entered an appearance. It is doubtful whether the appellant even has standing to object to the service upon the defendant Alice Lynn Coates (Cotes). *See Superior Outdoor Advertising Co. v. State Highway Commission of Missouri,* 641 S.W.2d 480, 481, 483 (Mo. App.1982). Even assuming such standing does exist, the petition, served together with the summons, did contain the attorney's address and the summons itself contained the attorney's mail drop number. No jurisdictional impairment resulted in the absence of a showing of prejudice. *See Newman v. Prior,* 518 F.2d 97 (4th Cir.1975) (summons indicated parties by reference to complaint); *Vega Matta v. Alvarez,* 440 F.Supp. 246 (D.C.P.R.1977).

## II.

Under her point II the appellant alleges a myriad of errors. Basically they are as follows: 1) trial counsel for Frank and Janette was allowed to testify at the "equity hearing," 2) Frank getting to stay in the home and use the car during the will contest deprived him of standing, 3) allowing the executor to remain during the will contest "ratified" the 1980 will, 4) the request and order of a partial distribution after filing the will contest estopped Frank from pursuing the contest, and, 5) because Frank and Janette had conflicting interests they lost standing by employing the same attorney.

■ 1). Prior to trial a hearing was held on the appellant's equitable claims of estoppel and waiver arising out of the partial distribution to Frank. At that hearing before Judge Parrish, over appellant's objection, trial counsel for Frank and Janette was allowed to testify as to certain matters, particularly attempting to explain why an application for partial distribution (discussed *infra* in (4)) had been requested of

the executor for Frank by his attorneys under the auspices of Article X of the 1980 will. The rulings in the equity hearing were adverse to appellant. She claims reversible error in permitting counsel to testify in narrative form when Frank was there to testify. For support of this point she relies on DR 5–102(A) which states an attorney, subject to exceptions stated in DR 5–101(B)(1–4), when it was obvious the attorney may be a "witness on behalf of his client ... shall withdraw from the conduct of the trial ...."

The attorney for Frank and Janette relies upon "trial strategy" for not putting Frank on the stand, but say no ethical consideration was breached in allowing him to testify in a pre-trial matter.

The explanation in *Menzi v. White,* 360 Mo. 319, 228 S.W.2d 700, 707 (Mo.1950) of lawyer testimony is applicable here:

"Our rule, (Supreme Court Rule 4.19), is intended to discourage, but does not completely forbid, an attorney from testifying in a case which he actively assists in trying. * * * It would have been well for the attorney to have left the conduct of the trial to other counsel, but our rule does not exclude his testimony."

*Burgdorf v. Keeven,* 351 Mo. 1003, 1010–1011, 174 S.W.2d 816, 819 (1943). Certainly the better practice would be for trial counsel to avoid testifying; but here it was not prejudicially erroneous.

■ 2). The appellant states since the 1980 will allowed the executor, Icenogle, to take possession of the real estate, and since he continued as executor after the will contest was filed and succeeded in having Frank act as caretaker for the residence (devised to appellant) and of the truck, Frank (and Janette) have received the benefits of the 1980 will and have, in effect, made an election not to contest it.

Allowing Frank to live in the house through application to and order of the probate court should not affect the standing of Frank and certainly not of Janette to continue to contest the 1980 will. The appellant is serving a sentence. It was appro-

priate for someone to care for the extensive real estate. See discussion infra (4).

■ 3). Also without merit is the appellant's assertion that because Frank and Janette failed to request a hearing to have an administrator pendente lite appointed under Section 473.137 RSMo.[6] they made an election to ratify the 1980 will. She reasons that because in the first paragraph of this section there is a provision a hearing if a will contest is filed, and since no hearing was requested by Frank and Janette as persons interested in the probate of the will, their contest of the 1980 will was not a "valid" will contest. She cites no authority for this proposition. Whether the executor's authority is continued or suspended here has nothing to do with standing for the will contest.

4). The appellant's next issue raised in this extended point basically says Frank's solicitation and receipt of a $3000 partial distribution, during the contest, under a provision of the 1980 will, amounts to a ratification of the will he was contesting and results in his losing standing to contest. The appellant surmises that since Frank requested the money from the law office that represented he and Janette, and that office relayed the request to the executor who made formal application to the probate court, and since Janette didn't contest this action she also lost standing, leaving no one to prosecute the will contest.

The time sequence of events on the partial distribution is as follows:

August 25, 1980—1978 and 1980 wills filed.

September 4, 1980—contest of 1980 will filed by Frank and Janette.

October 21, 1980—court again allows Frank to stay in Dr. Danforth's home and drive the truck.

December 2, 1980—application by executor for partial distribution of $3000 for Frank pursuant to Article X of the 1980 will.

December 11, 1980—hearing on application in probate court—Janette not present, partial distribution allowed.

January 30, 1981—hearing on motion to modify the December 11 order to take out reference to distribution being under 1980 will.

May 6, 1981—probate court makes docket entry that Frank was mentioned in both wills, and even if both thrown out and it was determined his father died intestate, Frank would take as an heir who had not been disqualified.

The widow characterizes the above events as,

"[A]fter the significance of voluntarily accepting benefits under the will dawned on plaintiffs, they went through the recorded shenanigans of attempting to have the order of partial distribution changed—after the fact."

■ As noted earlier, the issue on the affirmative defense of election and or estoppel was decided adversely to the appellant by the trial judge in the "equity hearing". Under the standard of review of Rule 73.01, the trial court's ruling will not be disturbed. The appellant does not here elucidate on the evidence of the elements necessary to sustain the affirmative defense of estoppel. *See Trustees' of Exermont Subdivision v. LaDriere,* 636 S.W.2d 90, 92

---

6. Section 473.137 reads as follows:

"Administrator pending contest, appointed when—duties

1. If the validity of a will is contested by any person who, after a hearing in the probate division, is found to be interested in the probate of the will, the court shall grant letters of administration to the executor named in the will, if he has no beneficial interest in the estate save the compensation allowed by law to executors, upon giving bond in such amount as the court may require.

2. If, after such hearing, it appears that the executor named in the will has an interest ad-

verse to any such contestant of the will, the court may, in its discretion, grant letters of administration to some disinterested person or corporation, who shall give proper bond.

3. An administrator appointed pursuant to this section shall proceed with the administration of the estate until termination of the will contest, at which time he shall account to the executor or legal administrator when qualified, and, if it shall appear to the court that the decedent died possessed of real estate in the state, the court shall direct him to take charge of and manage such real estate until the termination of such will contests."

(Mo.App.1982), for the elements of estoppel (statements inconsistent with claim, action by other party on the faith of such statements, and injury to other party resulting from allowing the contradictory statement). *See also Willman v. Phelps,* 631 S.W.2d 63, 67 (Mo.App.1982), where the court speaks of estoppel forclosing one from speaking truth in his own behalf after another has acted in good faith upon his repudicated earlier statements or actions—each element of such a claim must be clearly borne by the party asserting estoppel. Here as in *Willman,* there has been no showing the other party has relied upon the statements. The appellant made no showing that she didn't continue to believe Frank and Janette would continue this suit alleging fraud.

█ An administrator pendente lite may not make a distribution. *Leahy v. Mercantile Trust Co.,* 296 Mo. 561, 247 S.W. 396, 402 (1922); *Baker v. St. Louis Union Trust Co.,* 234 S.W. 858, 860 (Mo.App.1921). No one has requested a hearing in the probate division under Section 473.137 to replace Icenogle the executor of the 1980 contested will. Without entering the thicket of who or whom might be liable for an improvident partial distribution, suffice it to say this would not supply a missing element to the appellant's equitable defense in the present will contest. As stated earlier, Janette has done nothing which will aid the appellant. There was no abuse of trial court discretion. This point is ruled against the appellant.

█ 5). The appellant again alludes to the question she raised in her point concerning the standing of Frank and Janette, particularly their having different financial interests if the 1980 will does not stand, and it was improper for an office to have represented both of them, this yoking precludes them from maintaining or winning their contest suit. She presents no authority for this contention. She contends Frank would have received approximately $523,000 under the 1980 will, $371,000 under the 1978 will and $247,000 if his father was determined to have died without a will. Janette got $10,000 under the 1980 will. First, the appellant's figures do not necessarily reflect the result of the net dollar shares of Janette or Frank if the widow got nothing. Although it is safe to assume, no matter what the status of the widow, Janette would get less under the contested will and Frank would get more, the fact they chose to employ common counsel is their decision and any problems they might have is between them as clients and their lawyer. Their selection of counsel does not impede their ability to contest the 1980 will. There is no question made by the appellant but that Janette would gain by having the 1978 will probated. She alone would have standing, with or without Frank, to contest the 1980 will.

### III.

█ The appellant levels the charge of error against the trial court for "refusing to strike the petition's jurisdictionally insufficient pleading of fraud," and thereupon for entering judgment on a finding of fraud on her part where the petition has not pleaded with sufficient particularity to state a claim for fraud. Reduced to its essence she says paragraph 10 of the contestant's petition is as a matter of law insufficient to state a claim under Rule 55.15 [7] for fraud.[8]

Although the initial attack she makes on paragraph 10 of the petition set out *supra,* is of insufficiency subjecting the petition to a motion to dismiss a claim or a motion to strike, Rule 55.27(a) and (e); most of her argument is of a bent that sounds of a complaint of lack of definiteness or certainty. *See* 55.27(d) (motion for more definite statement).

7. Rule 55.15 says in pertinent part:
   "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge and any other condition of mind of a person may be averred generally."

8. The elements of fraud are:

"A representation, its falsity, its materiality, a speaker's knowledge of the falsity, his intent that his statement should be acted upon by the other party and in the manner contemplated, that party's ignorance of the falsity, his reliance on its truth, his right to rely thereon, and his consequent injury."

Without attempting to trace the confusing procedural history on this point which is not explained by the legal file, suffice it to say as measured against the elements of fraud, and the particularity of pleading required on certain of those elements under Rule 55.15, the petition here is sufficient to withstand a motion to dismiss or to strike—the only element not specifically included in paragraph 10, the consequent injury, seems most obvious, the testator within 4 days of getting married and making the will ended up a homicide victim having had his brain almost completely blown out of his skull.

If the petition were subject to any infirmity for the generality of the allegations, a motion to make more definite and certain under 55.27(d) might have been in order, but such generality does not warrant a dismissal. *McGuire v. Bode,* 607 S.W.2d 165, 167 (Mo.App.1980); *Wallis v. St. Louis Cty.,* 563 S.W.2d 93, 95 (Mo.App. 1978). Here the pleader was required only to state the ultimate facts—it was not necessary to plead the facts or circumstances by which the ultimate facts would be established to avoid a motion to dismiss. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976). *See also, Hamilton v. Linn,* 355 Mo. 1178, 200 S.W.2d 69, 71 (1947).

Reliance on *Green Acres Enterprises, Inc. v. Nitsche,* 636 S.W.2d 149 (Mo.App.1982), by the appellant is unfounded. In *Green Acres* the plaintiff attempted to try the case, and the defendant so responded on a breach of contract theory of recovery, and the plaintiff later attempted to switch theories to one of fraud. Here the theory of fraud was pleaded and the appellant defended the contest on that theory.

### IV.

The most that can be said for the appellant's fourth point is that it borders on the absurd. The following is not intended to dignify her contention that because 1) Frank and Janette pleaded there was a marriage on August 13th, 2) that appellant didn't move in with Dr. Danforth, 3) that testimony of Frank and Janette's witnesses was to the effect the decedent on August 16th and 17th, said he was upset that she didn't consummate the marriage, 4) kept sending him out to the car on the honeymoon, and would spend hours on end in the bathroom, 5) and didn't move in with him upon their return to Climax Springs, 6) and that on Monday the 18th if she didn't act better he was going to annul the marriage and change his will, all had the net effect of Danforth republishing his will and taking any fraud in the procurement of the marriage or of the will out of the case since he never did anything.

Dr. Danforth was last seen alive on Sunday the 17th at 8:30 p.m. after trying to work something out with the appellant. He went to her mother's home to talk to her. He never had a chance to change the will. He would have died even earlier if the plans of the appellant had gone as scheduled. For the appellant to infer that Dr. Danforth affirmed his 1980 will without doing anything further leaves out the fact that Dr. Danforth had no idea of the plans of the appellant to have him killed during the honeymoon or that on the 15th and 16th plans were being hatched for the two hired killers to take the man's life on those days. Mike Stith was convicted of the Danforth murder and the appellant of conspiracy. The point is denied.

### V.

For her next point she says "[T]he trial court erred in permitting plaintiff to try appellant widow on an unpleaded conspiracy-to-murder claim in a purported will contest . . . ," and that hearsay evidence of the plans to murder and the autopsy and injected, "false and distracting issues" into the deliberations. What she is really trying to do is to denominate as error any evidence of the plans of appellant and Stith of having Danforth killed after she married him and got him to change his will. Without going into the preservation of this point for appeal, it was not error to admit such relevant and material evidence as it tended to establish Frank and Janette's claim of fraud in contesting the 1980 will. Obviously the appellant would have preferred to not let the jury know she planned to have Dr. Danforth killed, and that Stith in her company had contacted the two would be

assassins on August 12th. Her other contention that this conspiracy should have been pleaded as a civil conspiracy is without merit. She could have requested a motion to make more definite and certain under Rule 55.27(d) to have better prepared her to defend this suit.

## VI.

■ The appellant finally contends the giving of instructions 5 and 7 [9] were erroneous as they gave the jury a "roving commission." This point is denied. Both instructions are contemplated under MAI.

The judgment of the trial court is affirmed.

All concur.

**9.** "Instruction No. 7

Your verdict must be that the document dated August 13, 1980, is not the last will and testament of Duncan R. Danforth if you believe that Duncan R. Danforth signed that document by reason of the fraud of Loretta Ollison Danforth.
M.A.I. 32.17 Modified
Instruction No. 5
■

■

The term "fraud" as used in these instructions means that representations were made to Duncan R. Danforth that were false and known to be so by the person making them; that the false representations were intended to deceive Duncan R. Danforth and did deceive him; that Duncan R. Danforth relied upon the false representations and was induced to sign a will that he would not otherwise have signed.
M.A.I. 15.02".