**In re ESTATE OF Elza Lunsford ABBOTT, Deceased.**

**Thurman L. ABBOTT, Personal Representative of the Estate of Elza Lunsford Abbott, Deceased, Plaintiff–Respondent,**

v.

**Mary ABBOTT, Defendant–Appellant.**

No. 20975.

Missouri Court of Appeals,
Southern District,
Division Two.

April 24, 1997.

SHRUM, Judge.

Thurman Abbott (Thurman) filed motions in the decedent estate of Elza Lunsford Abbott (Elza) to force Mary Abbott (Mary), conservator of Elza's estate during his incapacity, to make a final accounting of her conservatorship activities and deliver Elza 'a remaining assets to Thurman. After an evidentiary hearing, the Probate Division of the Wayne County Circuit Court ordered Mary to remit to Thurman: $73,224.45, a 1994 Chevrolet van, a man's diamond ring, and collateral held on a promissory note. Mary appeals from that judgment.[1]

Mary seeks reversal of the judgment on the theory that the court was without authority to enter it. She first claims that when Elza died, he was domiciled in the State of Washington and had no property in Wayne County, Missouri; therefore, no statutory grounds existed for the issuance of letters testamentary to Thurman and the court was without subject matter jurisdiction. Second, she contends that her filing of a separate suit to contest Elza's will caused an "automatic stay to [all] probate proceedings and that the court could not "proceed with [any] probate proceeding until [the] Will Contest action is [resolved]; consequently, "[a]ny judgment to come from such unlawful proceeding is a nullity."

We affirm in part; we reverse in part, and remand with directions that the trial court amend the judgment so that it is against Mary Abbott and in favor of an administrator pendente lite to be appointed by the court pursuant to § 473.137.[2]

## FACTS

On August 17, 1993, Mary filed a petition for appointment of a guardian for Elza and a conservator of Elza's estate. In this petition, Mary alleged that Elza was incapacitated due to "infirmities of old age." Mary requested her appointment as sole guardian and conservator. The petition also said that Elza was domiciled in Wayne County, Missouri. This

Mark A. Kennedy, Kennedy & Kennedy, Poplar Bluff, for defendant–appellant.

Christina L. Kime, L. Dwayne Hackworth, Hackworth, Kime & Bowles, Piedmont, for plaintiff–respondent.

1. In this opinion, we use the phrase "the court" when referring to the Probate Division of the Wayne County Circuit Court.

2. All statutory references are to RSMo 1994 unless otherwise indicated.

proceeding was identified as "Estate No. CV–1093–37P."

On June 23, 1994, both Mary and Thurman were appointed as co-guardians ad litem of Elza and co-conservators ad litem for Elza's estate. The court made the appointment in light of statements by counsel and medical reports. This order allowed Mary to take Elza to the State of Washington for a period not to exceed 90 days. It is not clear from the record if Elza was ever returned from Washington.

On September 20, 1994, the court entered a judgment of incapacity and disability. The judgment found Elza totally incapacitated and disabled. The court named Mary as sole guardian of Elza and as conservator of Elza's estate. The court found that Elza "is and has been a resident of Wayne County, Missouri." On the same day, the court issued letters of guardianship and conservatorship to Mary.

On October 14, 1994, Mary filed an inventory and appraisement in the court. The inventory listed monetary assets of $78,-710.49. The estate also included a man's ring valued at $1,000.

On March 16, 1995, Elza died. On March 24, Thurman filed Elza's purported last will and testament with the court. At this time, Thurman also filed an application for letters testamentary and a renunciation of the named personal representative. This proceeding was assigned "Estate No. CV 1095–18P."

Mary filed suggestions of death on March 27 in CV 1093–37P, the conservatorship estate. We cannot discern whether she ever filed another document in that estate.

On April 21, 1995, Mary filed objections to the appointment of personal representative in Estate No. CV 1095–18P. In these objections she said that Elza was not a resident of Missouri when he died, that Elza had no property located in Missouri, and that Thurman was not qualified to serve as personal representative. On that same date, April 21, 1995, a hearing was held on Thurman's application for letters testamentary. On that day, Thurman was appointed personal representative of Elza's decedent estate. On May 2, 1995, the court issued letters testamentary to Thurman and sent notice to all interested parties.

On August 9, 1995, Thurman began proceedings in the decedent's estate to make Mary account for Elza's assets under her control.[3] These efforts ultimately compelled Mary to file an accounting with the court in Estate No. CV 1095–18P, the decedent estate.[4]

The accounting showed that the estate had a beginning balance of $78,710.49 (which excluded the ring) and that afterward Mary received $18,513.96 additional funds that belonged to the estate. The accounting credited Mary with expenditures of $64,606.25. The balance of the estate as reflected by this accounting was $32,618.20 and the ring valued at $1,000.

On January 16, 1996, Thurman filed objections to the final accounting. He complained that Mary was not entitled to credit for $62,118.88 of her expenditures. Moreover, he objected to Mary's claim that she was entitled to an additional $27,000 for care and food furnished to Elza.[5] Again, this filing was in the decedent estate, not in the conservatorship estate. Thurman asked that Mary's "[f]inal accounting be surcharged for the sums found due the Estate...."

On March 4, 1996, the court held a hearing on Thurman's objections to the final account-

---

3. Inexplicably, it appears that neither the court nor anyone else has ever attempted to make Mary account for Elza's assets via proceedings in the conservatorship estate.

4. The record filed with this court does not show whether such accounting was ever filed in CV 1093–37P, the conservatorship estate.

5. Specifically Thurman objected to Mary taking credit for: certain attorney's fees; personal expenses without documentation; certain account-ing fees; payment for a motor vehicle bought for Elza but unlisted as an asset of the estate and titled in Mary's name; $13,422 to Mary's sister Carolyn without explanation; loan to Mark Purvis; medical care expenditure without documentation; travel expenses without documentation; travel expenses for grandchildren; household expenses without documentation; and, a request that Mary be paid $27,000 for Elza's care and food without documentation.

ing. Neither Mary nor her counsel made an appearance. In the judgment ultimately entered, the court noted that Mary's counsel had "contacted the Court by telephone on the morning of the hearing to advise ... that he had received notice of the hearing but neither he nor [Mary] would [appear] as they had nothing to add to the proceedings." At the hearing, Thurman testified about the estate assets when Mary started her conservatorship and his objections to the accounting. In its judgment filed on March 30, 1996, the court ordered Mary to pay to Thurman, as personal representative, $73,224.45, a 1994 van purchased for Elza's benefit, the diamond ring, and a watch held as collateral for the loan to Mark Purvis. This appeal followed.

### DISCUSSION AND DECISION

■ The judgment handed down from the court involved the final accounting of Elza's conservatorship estate; yet, this adjudication came in the decedent estate, not in the conservatorship estate. Because of this anomaly, Mary's first point maintains that the court lacked authority to adjudicate her final accounting in the decedent estate because it never had subject matter jurisdiction to probate Elza's will and allow administration of Elza's decedent estate. Specifically, Mary argues—without evidentiary support—that Elza was not a domiciliary of Missouri and had no property, real or personal in Missouri. From that premise alone, Mary launches her claim that the court was without subject matter jurisdiction, apparently relying on § 473.010.1(1)–(2).[6]

Fatal to this point is Mary's disregard of § 473.010.1(3). The latter section reads:

"1. The will of any decedent shall be probated and letters testamentary or of administration shall be granted:

. . . .

(3) If the decedent had no domicile in this state and left no property therein, in any county in which the granting thereof is required in order to protect or secure any legal right."

In 1955, the probate laws revision committee stated that § 473.010.1(3) was included to "permit administration on estate of decedent who had no property when necessary to enforce legal rights." *State ex rel. McCubbin v. Ginn*, 347 S.W.2d 119, 124 (Mo.banc 1961).

■ Here, the granting of letters testamentary in the county was proper "in order to protect or secure ... [the] legal right" of any person interested in Elza's decedent estate. Interested parties clearly were entitled to an accounting from Mary and to have Elza's assets delivered to the personal representative of his estate. If Mary had filed an accounting in the conservatorship estate, any interested party could have objected to that accounting. However, the availability of such an action in the conservatorship estate was not exclusive and did not preclude Thurman from trying to secure an accounting for and delivery of assets through the appointment of a personal representative in Wayne County. The court was responsible for assuring that Mary not only accounted for Elza's assets, but that she also transferred them from one estate to the other. In this capacity, the Wayne County court was the court best situated to protect the rights and interests of those interested in Elza's decedent estate and, therefore, a proper court to issue letters testamentary. Furthermore, Thurman, a resident and domiciliary of Wayne County, was named the primary beneficiary under the will filed on March 22, 1995.[7] Thurman has a definite protectable right and interest in the administration of Elza's decedent estate and under the circumstances, the court had authority under

---

6. "§ 473.010.1. Venue
"1. The will of any decedent shall be probated and letters testamentary granted or administration shall be granted:
"(1) In the county in which the domicile of the deceased is situated;
"(2) If he had no domicile in this state then in any county wherein he left any property; except that when the major part of a nonres-

ident decedent's estate in this state consists of real estate, the will shall be probated and letters testamentary or of administration shall be granted in the county in which the real estate or the major part thereof is located."

7. Mary Abbott and Carolyn Abbott both received nominal bequests.

473.010.1(3) to issue letters testamentary to Thurman. Consequently, even if all of Elza's assets were in the State of Washington and he was domiciled in that state as Mary contends, her argument fails.

■ We deny Mary's first point for yet another reason. Although Mary argues that Elza was not domiciled in Missouri and had no property in this state, she does not direct us to any evidence in the record that supports such claim. Further, we have searched the record for such evidence and find none. What we do find is that on April 21, 1995, Mary filed objections to Thurman's application. In her written objections, Mary asserted that at Elza's death, he was not domiciled in Missouri and had no property in this state. Documents in the legal file suggest that a hearing was held on Thurman's application for letters testamentary, yet Mary has not filed a transcript of that hearing. The omitted transcript of the April 21, 1995, hearing is essential to our review. Without it we do not know what evidence, if any, was presented at that hearing regarding Elza's domicile at death.

■ "On appeal, a trial court judgment is presumed valid," *Delaney v. Gibson*, 639 S.W.2d 601, 604[4] (Mo.banc 1982), and the burden is on appellant to show the incorrectness of the judgment. *Id; Shadow Lake v. Supervisor of Liquor Control*, 893 S.W.2d 835, 838–39[6] (Mo.App.1995). It is essential that this court have *all* the evidence necessary to decide the questions presented. *Sydnor v. Director of Revenue*, 876 S.W.2d 627, 628[3] (Mo.App.1994).

■ An appellant is responsible for filing transcripts of the evidence and for preparing a legal file so that the record on appeal contains all of the evidence necessary for determination of questions presented to the appellate court for determination. *Id.*, (citing Rule 81.12). Where no transcript is filed, such evidentiary omission will be taken as favorable to the trial court's ruling and unfavorable to the appellant. *Delf v. Cartwright*, 651 S.W.2d 622, 624[3] (Mo.App.1983); *Shadow Lake*, 893 S.W.2d at 839[7].

■ Since Mary filed her objections on April 21, 1995, the domicile issue was squarely placed before the court as part of what it had to decide. We will not convict the court of error in deciding the venue question when we do not know what evidence was before it. *See In re The Carl McDonald Revocable Trust*, 942 S.W.2d 926, 932–33 (Mo.App.S.D. 1997).

■ Mary's only effort to show Elza was domiciled in Washington are statements made in her brief that "Decedent had moved to Everett, Washington to live permanently with his daughter...." She follows, "[t]his is evident by the fact that all of his assets were moved to Everett, Washington to be convenient for ... his Conservator and Guardian." Statements in a brief that are unsupported by the appellate record are not evidence and are not sufficient to supply essential matters for review. *In re Marriage of Lawry*, 883 S.W.2d 84, 89[17] (Mo.App. 1994). While the record suggests that Elza's assets were transferred to Washington, this fact does not show Elza's intent to make Washington his domicile. The omitted evidence is taken as favorable to the determination by the court that when Elza died, he was domiciled in Missouri. For this additional reason, Mary's first point fails.

■ In her second point, Mary argues that the will contest she filed acted as "an automatic stay" of all probate proceedings; therefore, the court's judgment against her "is a nullity." She broadly contends—without citation to authority—that "[w]hen a Will Contest is filed, all probate proceedings must cease until the Will contest is completed." Apparently, her contention stems from the fact that when a will contest is filed, the court order admitting the will and the order granting letters testamentary are vacated until the will is proven by the circuit court. *Danforth v. Danforth*, 663 S.W.2d 288, 293[1] (Mo.App.1983); *Hodges v. Hodges*, 692 S.W.2d 361, 365, n. 3 (Mo.App.1985). Based on that principle, Mary asserts that the court's authority to entertain any proceedings concerning Elza's probate estate was stayed, including the objections to final accounting. We disagree.

■ The subject matter jurisdiction of the probate division is set forth in § 472.020.

This statute states the court has jurisdiction to hear and decide "all matters pertaining to probate business." During a will contest, § 473.137 contemplates the issuance of letters of administration to the personal representative or an administrator pendente lite in the court's discretion.[8] Significantly, the statute mandates that an administrator appointed pursuant to § 473.137 "shall proceed with the administration of the estate until termination of the will contest...." § 473.137.3. As explained in *Odom v. Langston*, 351 Mo. 609, 173 S.W.2d 826 (1943), "[t]he purpose of the statutes [now § 473.137] is to permit the *administration* to proceed during a will contest so that creditors may be paid, etc.; but otherwise the status quo ante is maintained." *Id.*, 173 S.W.2d at 837[31]. The fact that the legislature gave probate division courts authority to issue letters of administration during a will contest period and directed that such administrator "shall proceed with the administration of the estate" dispels any notion that the legislature intended to divest such courts of subject matter jurisdiction while a will is being contested. It logically follows that probate division courts retain authority during a will contest period to enter judgments or orders that will bring assets into the estate. If this were not so, then in cases such as this, there would be nothing to administer during the will contest interval and no assets with which to pay "creditors, etc." We hold that the filing of the will contest did not deprive the court of authority to enter a judgment compelling Mary to turn over to Elza's decedent estate assets that properly belong in that estate. To the extent that Mary's second point contends otherwise, it is denied.

■ Mary is correct when she insists that the order appointing Thurman as personal representative and granting letters was automatically vacated when she filed her will contest. *See Danforth*, 663 S.W.2d at 293[1]. The record does not reflect that the court granted letters of administration to any person during the contest of Elza's will. *See* § 473.137.1. The trial court erred in not issuing letters of administration *pendente lite*; yet, as discussed above, this was not an error that deprived the court of authority to order Elza's assets into his decedent estate.

■ Although Thurman's authority as personal representative was vacated by the will contest, his status as an "interested party" continued. His interest stemmed from the possibility that he could prevail in the will contest and be entitled to all of Elza's estate.[9] As an interested party, Thurman had standing to seek an accounting from Mary and attempt to bring Elza's assets into the decedent estate. Whether Thurman's "Objections to Final Accounting" and the relief he sought is viewed as an "adversary proceeding," § 472.140.2,[10] or as an action for discovery of assets, § 473.340,[11] is of no con-

8. In pertinent part, § 473.137 reads:
 "1. If the validity of a will is contested ... the court shall grant letters of administration to the executor named in the will, if he has no beneficial interest in the estate....
 "2. If, after ... hearing, it appears that the executor named in the will has an interest adverse to any such contestant of the will, the court may, in its discretion, grant letters of administration to some disinterested person....
 "3. An administrator appointed pursuant to this section *shall proceed with the administration of the estate until termination of the will contest....*" (emphasis added).

9. In pertinent part, § 472.010(15) of the probate code defines "interested party" thusly:
 "[D]evisees ... or any others having a property right or claim against the estate of a decedent being administered.... *This meaning may vary at different stages and different parts*

of a proceeding and must be determined according to the particular purpose and matter involved." (emphasis added).

10. In pertinent part, § 472.140 reads:
 "2. **'Adversary probate proceeding'** as used in this section ... means any proceeding brought pursuant to any provision of chapters 472, 473, 474 and 475, RSMo, which requires, as a condition precedent to an entry of an order or judgment on the merits, notice of hearing to persons interested in the proceeding, except that proceedings ... as to settlements of conservators shall not be deemed to be adversary *unless and until an interested person files objections to the action proposed or the account stated. ...*" (emphasis added).

11. In pertinent part, § 473.340 provides:
 "1. Any ... person who claims an interest in property which is claimed to be an asset of

sequence. In either event, Thurman could bring the action as an interested party. However, he should not receive the assets nor have the judgment run in his favor, either individually or as a fiduciary. Therefore, we remand with directions to the court to amend its judgment so that it runs in favor of an administrator pendente lite to be appointed by the court pursuant to § 473.137.

The judgment against Mary Abbott for $73,224.15 is affirmed. We also affirm that part of the judgment against Mary Abbott that deals with specific items of personal property. We reverse the judgment to the extent that it is entered in favor of Thurman L. Abbott as personal representative of the Estate of Elza Lunsford Abbott, deceased. We remand with directions that the trial court amend the judgment so that it is entered against Mary Abbott and in favor of an administrator pendente lite to be appointed by the court pursuant to § 473.137.

MONTGOMERY, C.J., and PARRISH, J., concurs.

an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. . . . "