In the Matter of the ESTATE
OF Ernest G. WILDE.

Nos. 71100, 71409.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 16, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 9, 1998.

Application for Transfer Denied
March 24, 1998.

Kim B. Blankenship, Pulos, Blankenship & Jianakoplos, P.C., St. Louis, for appellant.

Thomas B. Connelly, St. Louis, for respondent.

JAMES R. DOWD, Judge.

This is a consolidated appeal from two proceedings involving the Estate of Ernest Wilde ("Estate") in the Circuit Court, Probate Division, St. Louis County. Shirley Semar sued the Estate to recover in quantum meruit for services she rendered to an elderly couple prior to their deaths. At the close of Ms. Semar's case, the court granted the Estate's motion for a directed verdict. Ms. Semar filed a motion for new trial which the court denied. In a subsequent lawsuit, the Estate sued Ms. Semar alleging that she breached her duty as personal representative of the Estate by failing to rent the Wildes' home and was therefore liable for the amount of the rent that she failed to collect. The court entered judgment for the Estate in the amount of $16,820. Ms. Semar now appeals

the judgments from these two proceedings. We reverse and remand.

The facts central to this case are not in much dispute. In August of 1985, Ms. Semar moved into the home of Ernest and Anita Wilde. Ms. Semar is not related to the Wildes. Initially Ms. Semar agreed to help the Wildes with minor household chores, such as shopping, in exchange for being allowed to live in the Wildes' home. Between 1985 and 1987, she spent approximately twelve hours per week helping the Wildes with their household needs. In 1988, she was assisting the Wildes on a more full-time basis. Ms. Semar was then doing all of the Wildes' shopping, cleaning, driving, cooking, bookkeeping, and bathing. On August 17, 1989, Mr. Wilde executed a new will which replaced a prior will executed in 1987. The terms of the will gave Ms. Semar a life estate in the Wildes' home, or, in lieu of the life estate, she could elect to receive one-half of the proceeds from the sale of the home. The will also named Ms. Semar as the Estate's personal representative. Mrs. Wilde died in 1990. Ms. Semar continued to work in the Wildes' home until the death of Mr. Wilde in 1991.

On August 14, 1991, the court admitted Mr. Wilde's will to probate and granted Ms. Semar letters of administration. A will contest was filed on November 6, 1991, and Ms. Semar was found to have exercised undue influence over Mr. Wilde during the execution of the 1989 will. As a result, Mr. Wilde's 1989 will was declared invalid, and the will executed by Mr. Wilde in 1987 took effect. The court removed Ms. Semar as the personal representative of the Estate on August 24, 1993, and appointed a successor personal representative on September 9, 1993.

While the will contest proceeding was pending, Ms. Semar filed a petition seeking $34,500 in quantum meruit against the Estate for the value of the services she rendered to the Wildes from 1985 to 1991. At trial Ms. Semar testified about the services she provided to the Wildes, and stated that she expected to be paid for her services based upon the 1989 will. A witness who owned and operated a home health care

agency testified that it would cost at least $3,600 per month to provide the Wildes with the kind of home health care services rendered by Ms. Semar. At the close of Ms. Semar's case, the court granted the Estate's motion for a directed verdict, concluding that Ms. Semar performed her services gratuitously. The court subsequently denied Ms. Semar's motion for new trial.

Following the termination of Ms. Semar's suit against the Estate, one of the beneficiaries under the 1987 will filed a Petition to Determine Liability of Prior Independent Personal Representative against Ms. Semar. The petition alleged that Ms. Semar was not entitled to live in the residence rent-free after the Wildes died, and that Ms. Semar, as personal representative of the Estate under the 1989 will, was under a duty to lease the Wildes' home and to collect rents. By failing to collect rents on the Wildes' home, the Estate argued that Ms. Semar breached her duty as personal representative and was liable for the rental value of the property during her tenure as personal representative. The case was submitted on the pleadings, and the court held that Ms. Semar breached her duty under section 473.263 [1] to collect rents between December 6, 1991 and August 31, 1993. The court entered judgment in favor of the Estate in the amount of $16,820.

In this appeal Ms. Semar raises two points of error. First, Ms. Semar argues that the court erred in granting the Estate's motion for a directed verdict on her quantum meruit claim. Second, Ms. Semar contends that the court erred in ruling in favor of the Estate on its Petition to Determine Liability of Prior Independent Personal Representative because the filing of the will contest terminated her duty to collect rent.

### I. Directed Verdict

The standard of review for the direction of a verdict is that it is inappropriate unless, viewing the evidence in a light most favorable to the plaintiff, reasonable minds could only find in favor of defendants. *Holtmeier v. Dayani,* 862 S.W.2d 391, 395 (Mo. App. E.D.1993). When reviewing a directed verdict in favor of a defendant, we view the

evidence in the light most favorable to plaintiff, disregarding all contrary evidence and inferences. *Shaffer v. Federated Mut. Ins. Co.,* 903 S.W.2d 600, 602 (Mo.App. S.D.1995); *Schaffer v. Bess,* 822 S.W.2d 871, 877 (Mo. App. E.D.1991). Despite viewing the evidence in favor of the plaintiff, however, if we find reasonable grounds to support the directed verdict, we will affirm it. *Schaffer,* 822 S.W.2d at 877.

Quantum meruit is a remedy to enforce quasi-contractual obligations and is generally justified on a theory of unjust enrichment. *Landmark Systems, Inc. v. Delmar Redevelopment Corp.,* 900 S.W.2d 258, 261 (Mo.App. E.D.1995). In a quantum meruit suit for the value of personal services where no family relationship exists, once a plaintiff establishes that he rendered services which were accepted by the deceased, the law implies a contract for compensation and the plaintiff is not required to prove that he intended to be paid. *Buchweiser v. Estate of Laberer,* 695 S.W.2d 125, 128 (Mo. banc 1985); *Smith v. Estate of Sypret,* 421 S.W.2d 9, 14 (Mo.1967). The defendant may then avoid liability by proving that these services were performed gratuitously. *Buchweiser,* 695 S.W.2d at 128.

Our task is to determine whether, viewed in a light most favorable to Ms. Semar, there is sufficient evidence to overcome a motion for a directed verdict. Ms. Semar is not related to the Wildes and testified that she rendered personal services which were accepted by the Wildes. Unless the Estate proves that Ms. Semar rendered her services gratuitously, this evidence creates a submissible case for quantum meruit. *Buchweiser,* 695 S.W.2d at 128.

In an attempt to prove that Ms. Semar provided her services gratuitously, the Estate cross-examined Ms. Semar to ascertain the basis of her expectation of payment:

Q. And you had no expectation of being paid for your services?

---

1. All statutory references are to RSMo 1994.

A. I did after the [1989] will was made. Yes.

Q. All right. Based upon the will?

A. Yes. And it's upon their verbalizing that to me.

Tr. at 144. Because Ms. Semar admitted that her expectation of payment was based on the 1989 will, which previously had been declared invalid, the court believed that it could not consider the 1989 will as evidence of Ms. Semar's expectation of payment, and concluded that her testimony constituted an admission that her services were rendered gratuitously. We disagree. Although the 1989 will may not be introduced to establish the disposition of the Estate, we hold that it is admissible as evidence of the source from which Ms. Semar expected compensation for her services. *See, e.g., Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 15 (Mo. banc 1994) ("[Evidence] that is relevant for one purpose but not for another is nevertheless admissible.") (citing McCormick on Evidence, sec. 59 (4th ed.1992)). The weight and credibility of Ms. Semar's testimony that she expected payment based on the 1989 will is for the jury to determine. *Kennedy v. Milligan,* 915 S.W.2d 784, 789 (Mo.App. W.D.1996); *Frisella v. Reserve Life Ins. Co. of Dallas,* 583 S.W.2d 728, 734 (Mo.App. E.D.1979).

The court erred in excluding evidence of Ms. Semar's expectation of payment as well as the expected manner of payment. Had this evidence been admitted, we think reasonable minds could differ as to whether Ms. Semar's services were rendered gratuitously. That Ms. Semar will not be paid in the manner she anticipated has no bearing on whether she expected to be paid. We therefore hold that the court erred in granting the Estate's motion for a directed verdict.

## II. Liability for Rent

Ms. Semar also appeals from the court's ruling that she breached her duty as personal representative of the Estate by failing to lease the real property of the Estate. Ms. Semar contends that the filing of the will contest on November 6, 1991 suspended her authority as personal representative of the Estate, and therefore, she was under no duty to rent the Wildes' home. The Estate essentially argues that because the court never appointed an administrator pendente lite, Ms. Semar's duty as personal representative continued throughout the will contest period.

 After a will contest is filed, the court's order granting probate and letters testamentary is vacated until the will is proven. *Estate of Abbott v. Abbott,* 944 S.W.2d 279, 284 (Mo.App. S.D.1997); *Danforth v. Danforth,* 663 S.W.2d 288, 293 (Mo.App. W.D.1983). During a will contest, however, the court may appoint an administrator pendente lite to administer the estate in place of the personal representative named in the will so that creditors may be paid, but otherwise to maintain the *status quo ante. Odom v. Langston,* 351 Mo. 609, 173 S.W.2d 826, 837 (1943).

The appointment of an administrator pendente lite is governed by statute.[2] Section 473.137 outlines the procedure to be followed when the validity of a will is challenged. Upon the filing of a will contest, the statute contemplates that the court conduct a hearing to determine whether the personal representative named in the contested will has a beneficial interest in the estate. Sec. 473.137(1). If the personal representative has a beneficial interest in the estate, the

2. Section 473.137 provides:

1. If the validity of a will is contested by any person who, after a hearing in the probate division, is found to be interested in the probate of the will, the court shall grant letters of administration to the executor named in the will, if he has no beneficial interest in the estate save the compensation allowed by law to executors, upon giving bond in such amount as the court may require.

2. If, after such hearing, it appears that the executor named in the will has an interest adverse to any such contestant of the will, the

court may, in its discretion, grant letters of administration to some disinterested person or corporation, who shall give proper bond.

3. An administrator appointed pursuant to this section shall proceed with the administration of the estate until termination of the will contest, at which time he shall account to the executor or legal administrator when qualified, and, if it shall appear to the court that the decedent died possessed of real estate in the state, the court shall direct him to take charge of and manage such real estate until the termination of such will contest.

court may not grant him letters of administration. *Id.* If, however, the court determines after the hearing that the personal representative—though having no beneficial interest in the estate—has an interest adverse to any contestant of the will, the court may in its discretion grant letters of administration to a disinterested person or corporation. Sec. 473.137(2).

■ We conclude the court erred in holding Ms. Semar liable in her capacity as personal representative for rents on the Wildes' home. Upon the filing of the will contest, Ms. Semar's duties as personal representative were suspended. In *Frick v. Frick,* this Court addressed the effect of a will contest on the authority of a personal representative:

> [T]his court in *Estate of Johnson v. Powell,* 708 S.W.2d 783 (Mo.App.1986) held that the filing of a will contest in the circuit court vacates the order probating the will, *without formal order of the court.* ... [W]e conclude that the authority of the executor is suspended upon the filing of the contested action regardless of the extent to which the contest affects the will. The probate judge would then be required to appoint an administrator pendente lite and to fix a bond in such amount as the court may require.

*Frick v. Frick,* 777 S.W.2d 653, 655 (Mo.App. E.D.1989) (emphasis added) (citation omitted). The court did not conduct and the Estate did not request a hearing pursuant to section 473.137 to appoint an administrator pendente lite. In any event, even had such a hearing been conducted, the court could not have appointed Ms. Semar as the administrator pendente lite because clearly she had a beneficial interest in the Estate. Therefore, between November 6, 1991 (the date the will contest was filed) and September 9, 1993 (the date letters of administration were granted to the successor administrator) no personal representative was charged with overseeing the affairs of the Estate.

The Estate's petition operates only on Ms. Semar in her capacity as a personal representative of the Estate. Having found that Ms. Semar's authority as personal representative of the Estate was suspended upon the filing of the will contest, we hold that the

court erred by finding that Ms. Semar breached her duty to collect rents from November 7, 1991 through August 24, 1993.

We reverse and remand.

CRANE, P.J., and RHODES RUSSELL, J., concur.